Argued December 14, 1933; affirmed January 2, 1934

# HESSE *v.* MITTLEMAN
### (27 P. (2d) 1022)

*J. A. Powers,* of Portland (Senn & Recken and W. E. Cameron, all of Portland, on the brief), for appellant.

*Alfred P. Kelley,* of Portland (Teal, Winfree, Mc-Culloch & Shuler, of Portland, on the brief), for respondent.

KELLY, J. From the first day of July, 1931, until February, 1932, plaintiff with her husband, and infant child, was a tenant occupying a suite on the fifth floor of defendant's apartment building. At about seven o'clock Saturday morning, September 26, 1931, plaintiff left her apartment, went to the laundry room which was on the first floor of the building, finished her baby's laundry and started to return to her quarters on the fifth floor. In attempting to return and, while crossing the lobby on the first floor, when plaintiff had come to a point about half way across the lobby, she slipped, her feet went out from under her and she fell on her back, sustaining personal injury.

Each Saturday, the tile floor of the lobby received an application of liquid veneer and kerosene for the purpose of cleaning it and making it appear attractive. That morning, the janitor had applied such liquid to the portion of the floor where plaintiff fell and was in the course of making such an application to the floor just outside of the lobby when plaintiff fell. The record discloses that there was some oil in the liquid veneer thus applied. These applications to the floor of this liquid were made under the direction of the manager of the building.

The charge of negligence alleged in plaintiff's complaint is that defendant, through and by his agents and employees, failed to exercise reasonable care in applying said oily, slippery, liquid substance or material to the surface of said floor, and failed to exercise reasonable care in the maintenance of said floor after the application of said liquid substance thereto, but allowed said floor to remain in a slippery, hazardous and unsafe condition.

Error is predicated upon the refusal of the trial court to grant a nonsuit. It is urged by defendant that

plaintiff did not submit sufficient evidence of negligence on the part of defendant to entitle the case to go to the jury and that the testimony does not show that the defendant was in any way guilty of negligence, which was the proximate cause of plaintiff slipping and falling.

■ Plaintiff testified that as she approached the place where she fell, she observed that the floor appeared to be shiny, and that after her fall she found that the pink Hoover apron, which she was wearing when she fell, was splotched with oil, especially through the shoulders and the lower part of the body. Plaintiff also testified that when she fell her shoulders hit the tile.

■ We think that the jury were warranted in inferring from these facts that an excess amount of the liquid floor dressing had been applied to the tile floor and had been permitted to remain where plaintiff fell. The suggestion is made that defendant was not charged with knowledge of such a fact. This suggestion is not tenable, because it was through the action of defendant's agents and employees in pursuing the customary, usual and ordered method of treating the floor that the condition thereof occurred.

It is urged that in order to sustain the verdict we must approve the basing of an inference upon an inference in that we must infer that there were no splotches of oil on the apron before plaintiff fell and also infer that the splotches found thereupon came from the contact of the apron with the floor.

Plaintiff in answer to the question, "Had there been any oil on those clothes before you fell?" said: "Not that I know of."

The jury had the advantage of seeing plaintiff while she was testifying and doubtless concluded that, if splotches of oil had been upon the shoulders and

lower part of plaintiff's apron before she fell, she would have known it. That inference could be based upon plaintiff's appearance, manner and personality and not upon any inference. Thus based it becomes a fact and is no longer a mere inference.

■ Moreover, from the proven fact that plaintiff had fallen upon a floor, which had just been treated to an application of some liquid, and in falling her apron at the points mentioned had come forcibly in contact with such floor, the jury were warranted in inferring that oil, thereafter found on the apron at the points of contact with the floor, came from the floor. Such an inference rests only upon facts proven. It is not the only inference that could have been drawn, but it is one which the jury might reasonably deduce.

Supported by such an inference, there is substantial evidence that at the time plaintiff fell there was an excess amount of oily substance upon the floor, in question, placed there by defendant's agents.

For that reason, no error was committed by the learned trial court in overruling defendant's motion for nonsuit.

No exception was taken to the trial court's refusal to give the instruction requested by defendant to the effect that plaintiff was not entitled to recover for permanent injuries because (as defendant contends) there is no competent medical testimony in the case that she suffered any permanent injuries.

■ Subject to the provision in rule 12 of this court, it is not simply error, but error legally excepted to, that constitutes ground for reversal. *Bailey v. Security Ins. Co.*, 100 Or. 163 (196 P. 252).

By the last clause of said rule 12, this court reserves the right in furtherance of justice to notice on

its own initiative a plain error of law apparent on the face of the record.

In the case at bar, we find no such error. The requested instruction declares the rule that permanency of injury may be shown only by competent medical testimony. Where the condition is not obvious, medical testimony should be offered to describe it. Where, however, the permanent character of an injury is apparent to anyone, medical testimony is not necessarily required.

■ In the case at bar, plaintiff introduced an affidavit, which, under a stipulation, was treated as the testimony of the physician and surgeon making it. In this affidavit, it is stated that affiant had examined plaintiff and had taken X-ray pictures, which pictures clearly show a recent fracture of the tip of the coccyx with the coccyx dislocated and deviated to the right; that subsequent to October 12, 1931, and up to and including July, 1932, affiant examined the coccygeal region of plaintiff on several occasions to determine the condition, and at each examination found little, if any, improvement; and that, based upon affiant's knowledge of plaintiff's condition, the usual, customary and proper treatment would be the removal of the coccyx by a surgical operation. As stated, plaintiff's injury occurred on September 26, 1931. At the trial in the circuit court on March 23, 1933, plaintiff testified that she was suffering pain like a toothache in the lower region of her spine,—"just a steady pain in the lower region of my spine". Bearing in mind that only three days less than a year and seven months had elapsed since her injury, and that such injury was a fractured coccyx, in the light of the medical testimony above set out, we are of the opinion that no error was committed

by the learned and experienced trial judge in submitting the question of permanency of plaintiff's injury to the jury. *Colgate Co. et al. v. Bross,* 25 Okla. 244 (107 P. 425, 138 Am. St. Rep. 915) ; *Wilbur v. Southwest Missouri Electric Ry. Co.,* 110 Mo. App. 689 (85 S. W. 671) ; *Southern Railway Co. v. Petway,* 7 Ga. App. 659 (67 S. E. 886) ; *Guild v. Portland Ry., L. & P. Co.,* 64 Or. 570 (131 P. 310) ; *Cluster v. Upton,* 168 Atl. 882.

The judgment of the circuit court is affirmed.

RAND, C. J., BELT and ROSSMAN, JJ., concur.