Argued December 2, 1941; reversed February 25, 1942

# BRIGGS *v.* JOHN YEON CO., INC., ET AL.

(122 P. (2d) 444)

Before Kelly, Chief Justice, and Belt, Bailey, Lusk, Rand, Rossman and Brand, Associate Justices.

*Leo Levenson* and *William J. Prendergast, Jr.,* both of Portland, for appellant.

*Frank S. Senn,* of Portland (Senn & Recken, of Portland, on the brief), for respondent.

LUSK, J. Plaintiff, Sonia Briggs, has appealed from a judgment of involuntary nonsuit in favor of the defendant and respondent, John Yeon Co., Inc., a corporation, in an action for damages for personal injuries based on negligence. A like judgment was entered in favor of the defendant, Lincoln National Life Insurance Company, a corporation, but no appeal therefrom has been taken.

John Yeon Co., Inc., hereinafter to be referred to as the defendant, owns and operates a fifteen-story office building known as the Yeon building in the city of Portland, Oregon. Lincoln Life Insurance Company, hereinafter to be referred to as the Lincoln Company, was, at the time of the accident to plaintiff, a tenant in the Yeon building with offices on the fifth floor. On the morning of November 7, 1938, plaintiff went to the office of the Lincoln Company with a friend Mrs. Agnes Fitzpatrick (then Mrs. Agnes Crocker), who had business to transact with that company. After entering the main office or reception room and walking a few feet the plaintiff slipped and fell to the floor and was injured.

She alleged in her complaint that the defendant rendered various services to its tenants, including the washing, polishing, oiling and waxing of the floors in the tenants' offices, and that her injury was caused by the negligence of the defendant in (1) placing and using upon the floor of the Lincoln Company's office an excessive amount of oily and waxy slippery substance or material as a waxing or polishing medium; (2) failing to use reasonable care in applying and properly drying this substance or material; (3) allowing the floor after the application of this substance or material to remain in a slippery, hazardous and

unsafe condition; and (4) failing to warn plaintiff of this dangerous condition.

Plaintiff's assignment of error, based on the court's order allowing the motion for nonsuit, calls for examination of the record to determine, first, whether plaintiff was an invitee or a mere licensee in the Yeon building, and, second, if she was an invitee, whether there is substantial evidence supporting any of the charges of negligence.

■ On the first question, the testimony is that Mrs. Fitzpatrick was under the doctor's care and was unable to go out alone, and that, at her request, Mrs. Briggs drove Mrs. Fitzpatrick down town in Mrs. Briggs' car and accompanied her to the Yeon building. The claim that Mrs. Fitzpatrick was unable to go to the Yeon building unattended was weakened on cross-examination, but not destroyed. Its truth or falsity was for the jury.

Mrs. Fitzpatrick, having business to transact with the Lincoln Company, was concededly its invitee, and, therefore, the invitee of John Yeon Co., Inc. (*Jones v. Bland*, 182 N. C. 70, 108 S. E. 344, 16 A. L. R. 1383); and the question is whether, under the particular circumstances of the case, assuming the necessity of a companion to attend Mrs. Fitzpatrick on her errand, the plaintiff enjoyed the same status.

■ According to 38 Am. Jur., Negligence, 759, § 99:

"One is not deemed to have been upon premises by implied invitation unless his purpose was one of interest or advantage to the owner or occupant. An invitation will be implied on behalf of one who enters the premises of another in pursuance of an interest or advantage which is common or mutual to him and the owner or occupant, but no more than a license is implied where one enters the premises of another, not

in response to any inducement offered by the owner or occupant, or for a purpose having some connection with a business actually or apparently carried on there, but for his own mere pleasure, convenience, or benefit.''

■ The Restatement, Torts, 900, § 332, says:

''It is not necessary that the visitor should himself be upon the land for the purposes of the possessor's business. The visit may be for the convenience or arise out of the necessities of others who are themselves upon the land for such a purpose. Thus those, who go to a hotel to pay social calls upon the guests or to a railway station to meet passengers or bid them fare-well, are business visitors, since it is a part of the business of the hotelkeeper and railway to afford the guest and passengers such conveniences. So too, a child taken by a mother or nurse to a shop is a busi-ness visitor; and this is so irrespective of whether it is necessary for the customer to take the child with her in order to visit the shop.''

This court, in *Napier v. First Congregational Church*, 157 Or. 110, 115, 70 P. (2d) 43, said:

''An invitation to use the premises of another is inferred where there is a common interest or mutual advantage, while a license is inferred where the ob-ject is the mere pleasure or benefit of the person using them.''

The subject is annotated as to some of its phases in 53 A. L. R. 82; 49 A. L. R. 773; 37 A. L. R. 1448.

In accordance with these principles it is held that an invitation to a store does not include one who ac-companies a prospective purchaser on the latter's busi-ness: *Murphy v. Huntley*, 251 Mass. 555, 146 N. E. 710, 37 A. L. R. 1447; *Fleckenstein v. Great Atlantic & Pacific Tea Co.*, 91 N. J. L. 145, 102 Atl. 700, L. R. A. 1918 C, 179; *Petree v. Davison-Paxon-Stokes Co.*, 30 Ga. App. 490, 118 S. E. 697. See, 38 Am. Jur. 793,

§ 132. The same rule has been applied to a person who accompanies a car owner to a public garage where the car is kept (*Murphy v. Huntley,* supra), though there are contrary decisions in *Warner v. Lucey,* 207 App. Div. 241, 201 N. Y. S. 658, aff. 238 N. Y. 638, and *Loney v. Laramie Auto Co.,* 36 Wyo. 339, 255 P. 350, 53 A. L. R. 73, the latter case, however, having special circumstances indicating something more than mere tolerance on the part of the garage owner, as is also true of *Pope v. Willow Garages Inc.,* 274 Mass. 440, 174 N. E. 727. *Davis v. Ferris,* 29 App. Div. 623, 53 N. Y. S. 571, and *Howlett v. Dorchester Trust Co.,* 256 Mass. 544, 152 N. E. 895, cited by the plaintiff, are really cases where the person whose status was in question had a sort of business relationship with the occupant of the premises. In the former case a wife accompanied her husband to a lumber yard to help him select a piece of lumber which he was purchasing for her purposes; in the latter, an infant son accompanied his mother to a bank in which she kept an account which included moneys of the son. The purpose of her visit was to make a deposit to the son's account. In the one instance the wife, and in the other the son, was held to be an invitee.

A case strongly relied on by the defendant is *Brosnan v. Koufman,* 294 Mass. 495, 2 N. E. (2d) 441, 104 A. L. R. 1177, which holds that the plaintiff, who went into an office building to mail a letter in the mail box in the lobby, was a mere licensee, notwithstanding it was a common thing for members of the public to use the corridor of the building as a short cut between streets. It was held that no invitation to use the premises was to be implied "from a merely tacit assent to the use of the place in question as a public crossing", and that no facts appeared from which it

might be implied that the owner of the building "authorized the public having letters to mail to come on the premises to do so".

Other cases cited by the defendant illustrate the principle, not applicable to the facts of the instant case, that if a person, although on the premises by invitation, goes to a place other than such as are covered by the invitation, the owner's duty of care ceases forthwith. See *Napier v. First Congregational Church,* supra; 20 R. C. L., Negligence, 68, § 59.

■ On its peculiar facts, the instant case is novel. Counsel have cited no similar case, and our research has discovered none. Viewing the testimony in the light most favorable to the plaintiff, it cannot be said that she went to the Lincoln Company's office for her own "mere pleasure, convenience or benefit", but rather it could be found that her visit, in the words of the Restatement, was "for the convenience or arose out of the necessities" of Mrs. Fitzpatrick, who had business to transact with the Lincoln Company. That being so, it would become a question for the jury, guided by instructions embodying the principles which have been stated, to determine whether the plaintiff enjoyed the status of an invitee or was a mere licensee in the defendant's building.

The following facts are relied on by the plaintiff to show the defendant's negligence:

Plaintiff and Mrs. Fitzpatrick arrived at the Lincoln Company's office about 11 o'clock in the morning. Mrs. Fitzpatrick entered the office first. She was about a foot ahead of the plaintiff, and to her left, as she walked toward a counter which was opposite the door some thirteen or fourteen feet distant. When Mrs. Fitzpatrick reached the counter she heard the

plaintiff scream, and looking down saw her lying on the floor. Mrs. Fitzpatrick assisted in placing the plaintiff on a chair and then examined the floor. She testified that the floor covering was highly polished linoleum except for one spot that was "wet looking", and that, about two feet from the counter, was a "skid mark" about a foot or two long, which looked like a shoe mark, where the plaintiff had slid; and this mark, she said, was in the spot that was "wet looking". Concerning this spot, she further testified as follows:

"Q  Will you describe to the jury what it looked like?
"A  It looked like wax that hadn't been rubbed in thoroughly, rubbed down.
"Q  How big was that surface?
"A  Oh, I should say about,—
"Q  —In comparison to the skid mark.
"A  In comparison to the skid mark?
"Q  Yes.
"A  Well, the skid mark was about a foot and a half or two feet long and it looked as though that wet surface was almost a foot and a half long.
"Q  And was this skid mark in the wet surface?
"A  Yes.
"Q  When you say 'wet' do you mean wet, as water, or,—
"A  No.
"MR. SENN: Let her explain, do the testifying.
"THE COURT: Yes,—
"Q  What do you mean by wet?
"THE WITNESS: A  Well, it was waxy looking.
"MR. PRENDERGAST: Q  And the skid mark was in that,—
"A  (interrupting) Yes."

Mrs. Briggs, the plaintiff, testified that she was walking behind Mrs. Fitzpatrick and to her right and

that she took about five steps after entering the office before she fell. We quote from her testimony:

"Q Then what happened?

"A Well, I put my foot, and just knock me over, and I don't know nothing, I don't remember nothing what happens to me.

"Q You put your foot down?

"A Yes, and just knock me over and I don't remember nothing what happen to me.

"Q Do you remember which way you fell?

"A On the left shoulder.

"Q What did your foot touch, if anything, do you know?

"A Well,—

"MR. SENN: (interrupting) Well, if she knows.

"MR. PRENDERGAST: I said if she knows,—

"Q Do you know what your foot touched? What did it feel like?

"A Like wax.

"Q Did you know what it felt like?

"A At the time I don't remember nothing, it just knock me over and I don't remember nothing."

When she recovered consciousness after the accident she examined the floor and saw the skid mark described by Mrs. Fitzpatrick. She said that the floor was "polished, shined" but that where the mark was "it look like it was wax but no polish".

She further testified that after she returned home from the hospital, which was seven days subsequent to the accident, the bottom part of her dress on the left side was "sticky, like wax and dirt".

There was testimony tending to show that the floor of the Lincoln Company's office was waxed or polished between noon Saturday preceding the accident and 8 o'clock of the following Monday when the office opened for business.

William Oliver, manager of the Yeon building, testified that the reception room of the Lincoln Company is eleven feet wide and twenty-seven feet long with a counter about half way back. The floor is covered with smooth linoleum, which the defendant's employes waxed and polished as part of the service rendered its tenants. They also mopped the floors with soap and water, but that was not done on nights when the floors were waxed. The wax is known as "rubber gloss", and had been used in the Yeon building for six or seven years. For a great many years, as manager of the building, he had experimented with various materials, and rubber gloss was the nearest to a "non-skid" wax that could be bought. He had used it in the elevators since November, 1932—more than eight years—on floors of rubber tile which is much harder to treat and more slippery than linoleum. The elevators have carried as many as 5,000 passengers a day and no slipping accident in an elevator has ever been reported. The wax is a heavy liquid, like an emulsion. When applied and polished hard it takes on a shine and leaves no hard particles or sand or non-skid substance on the floor.

Oliver was called to the Lincoln Company office shortly after the accident. He examined the floor and testified that there was no foreign, wet or slippery substance on it, no wet or blotchy spots, nor anything unusual about its condition.

George B. Schwieger, manager of the Lincoln Company, testified that he usually arrived at his office about 8 o'clock in the morning; that he walked across the floor of the reception room on his arrival and that, as far as he could see, it was in normal condition; and that perhaps as many as twenty or thirty cus-

tomers, in addition to the mail man and himself and two other employes, had likewise walked across the floor during the three hours that the office had been open before the accident to the plaintiff. He was in his private office at the time the plaintiff fell, heard her scream, and, going to the reception room, found the plaintiff prone on the floor. He examined the floor after the accident and observed no unusual condition.

The foregoing is, in substance, all the evidence bearing on the question of the defendant's alleged negligence.

For our present purposes we must take it as true that the portion of the linoleum floor-covering on which the plaintiff slipped presented the appearance of wet wax which had not been polished or rubbed in, whereas the rest of the linoleum was polished and shining, and also that the waxing material when polished hard becomes shiny. Some of the wax, it is shown, adhered to the plaintiff's dress when she fell. From these facts it is not an irrational deduction that the material had not been properly applied to the floor.

The defendant argues that there is no evidence that rubber gloss is a slippery substance or contains any oil or is in any other way dangerous, and that the plaintiff has failed to prove that it is slippery or dangerous when not properly applied. The plaintiff concedes that it was not negligent for the defendant to wax the office floors nor to use rubber gloss for that purpose, but she contends that the liquid wax is an inherently slippery substance and that the evidence showing its improper application to the floor justifies a finding that the defendant negligently created and permitted to remain an unsafe condition for persons invited to the Lincoln Company's office.

■■ We think it is a matter of common knowledge that wax is a slippery substance and that it would be well within the evidence for a jury to find that the defendant negligently applied the rubber gloss to the linoleum and that this negligence was the cause of plaintiff's injury. She testified that the part of the floor upon which she stepped at the time that she slipped felt like wax. That testimony constitutes evidence that the wet wax was the cause of her fall. *Haverty Furniture Co. v. Jewell,* 38 Ga. App. 395, 144 S. E. 46.

It is argued that the evidence is speculative because many persons had walked safely across the floor that morning before the plaintiff's accident, and it is said that it is just as probable that the accident was caused by a slippery substance carried into the office on the shoes of such persons. That other persons had used the floor without mishap is evidence in conflict with the truth of plaintiff's claim, and would warrant an inference that the floor was in a reasonably safe condition, but it would be for a jury to say whether it overcame the force of the sworn testimony on behalf of the plaintiff and the reasonable inferences therefrom. And, since there is no evidence that any dangerous substance was carried into the office on the shoes of any person, the court, were it to give heed to defendant's argument, would indulge in an unproved assumption and that would be to speculate instead of giving effect to the evidence.

The conclusion that the plaintiff has made out a case sufficient to be submitted to a jury is well supported by recent decisions of this court. *Saunders v. Williams & Co.,* 155 Or. 1, 62 P. (2d) 260; *Lopp v. First National Bank,* 151 Or. 634, 51 P. (2d) 261; *Hesse*

*v. Mittleman,* 145 Or. 421, 27 P. (2d) 1022; *Lyons v. Lich,* 145 Or. 606, 28 P. (2d) 872; *Hovedsgaard v. Grand Rapids Store Equipment Corp.,* 138 Or. 39, 5 P. (2d) 86. Indeed, it may be said that there are stronger reasons for sustaining the sufficiency of the evidence here than in *Saunders v. Williams & Co.,* supra, where the plaintiff slipped and fell in the defendant's department store and claimed that the accident was caused by oil which had accumulated in worn places in the floor, there being nothing to show when the floors were oiled; and in *Hesse v. Mittleman,* supra, where the only evidence that the defendant was negligent in cleaning the lobby floor of its apartment house with liquid veneer and kerosene was that the floor had just been mopped and that, after falling to the floor, the defendant's apron was splotched with oil.

The cases of *Gardner v. Regal Fruit Company,* 147 Or. 55, 31 P. (2d) 650; *Morrison v. Pacific Northwest Public Service Co.,* 146 Or. 225, 30 P. (2d) 344; *De Mars v. Heathman,* 132 Or. 609, 286 P. 144, are readily distinguishable for the reason that in them proof was lacking that the defendants either caused the dangerous condition or had notice or knowledge of its existence. Here it is proven that the employes of defendant waxed the floor, and it was therefore charged with knowledge of the resulting condition. *Hesse v. Mittleman,* 140 Or. at p. 423.

Nothing would be gained by reviewing cases from other jurisdictions cited by the defendant. They all announce the rule with which we are in entire accord, that it is not negligence to oil or wax floors. None of them, however, holds that waxing or oiling a floor improperly may not be evidence of negligence. In one or two, perhaps, (*Penny & Co. v. Robison,* 128 Ohio St.

628, 193 N. E. 401, 100 A. L. R. 705, and *Achter v. Sears, Roebuck & Co.,* 232 Mo. App. 915, 105 S. W. (2d) 959) evidence of a type which this court in some of the Oregon cases cited has deemed sufficient was held insufficient. The crucial question here, upon which everything else depends, is whether the floor was improperly waxed. If so, that is evidence of negligence. No satisfactory reason occurs to us, nor has any been suggested by the defendant, for holding that, notwithstanding the testimony as to the condition of the floor generally as compared with its condition in the place where the plaintiff fell, there is no substantial evidence that the defendant was at fault in respect of the manner in which the material was applied.

■ Since there was evidence warranting a finding that the plaintiff was an invitee, the defendant owed her the duty to exercise reasonable care not to create and permit to remain an unsafe condition in the Lincoln Company office. There was evidence of failure on the part of the defendant to discharge that duty. It was, therefore, error to grant the motion for a nonsuit.

In view of another trial, a ruling of the court below on an offer of evidence by the plaintiff must be noticed.

Oliver's duties, as he testified, were to rent the offices, to collect rents, and generally to supervise the cleaning, janitor, watchman and elevator service, the "complete maintenance of the building", and to hire and fire the employes. Under his supervision the books were kept, and he accounted to the board of directors of the John Yeon Co. Oliver also testified that on being advised of the accident he inspected the floor of the Lincoln Company office and questioned Mrs. Briggs regarding the accident.

The court refused to receive evidence that Oliver directed one George Mercer, a tenant in the Yeon build-

ing, to "take charge of the accident"; that Mercer, after questioning the plaintiff and other witnesses and examining the floor of the Lincoln Company office and otherwise investigating the cause of the accident, telephoned to the plaintiff's husband, a sergeant in the Army at the Army Post at Vancouver, Washington, informed Sergeant Briggs of his wife's injury, and requested him to come to the Lincoln Company's office; that Sergeant Briggs, upon his arrival, told Mercer that Mrs. Briggs was entitled to free medical and hospital service at the United States Army Post Hospital at Vancouver; and that Mercer stated that he was aware of this, but nevertheless wished Mrs. Briggs to remain in St. Vincent's hospital "under the care of doctors provided", and that all hospital, medical and ambulance expenses would be paid by the defendant without cost to the plaintiff or her husband; and that Oliver was present during this conversation. The plaintiff further offered to prove that a week later, when Mrs. Briggs had been released from St. Vincent's Hospital, Mercer called on her at the Army Post at Vancouver and made further representations to her of like tenor and effect.

■ The plaintiff claims that Mercer's declarations were competent as admissions of liability binding upon the defendant. In the view that we take of this question we need not decide whether Oliver had authority to appoint a subagent to perform acts involving the exercise of judgment and discretion. Since Mercer's statements in the Lincoln Company's office were made in Oliver's presence and had his tacit assent and approval they should no doubt be regarded as the statements of Oliver himself. Nor is it necessary to determine whether the offer to defray the plaintiff's medical and hospital expenses would, under the circum-

stances here shown, if made by an authorized person, constitute an admission of liability. The correct rule in that regard which seems, however, not to have been recognized in our decision in *McCallister v. Farra,* 117 Or. 278, 284, 243 P. 785, is, as stated by Circuit Judge Soper in *Arnold v. Owens,* 78 Fed. (2d) 495, "that a voluntary offer of assistance made upon an impulse of benevolence or sympathy may not be considered an admission of culpable causation (citing authorities). If, however, the surrounding circumstances indicate, not merely an act of benevolence, but some admission of fault on the part of the defendant, the evidence may be admissible." See: *Watt v. Associated Oil Co.,* 123 Or. 50, 260 P. 1012; *Bernasconi v. Bassi,* 261 Mass. 26, 28, 158 N. E. 341; *Grogan v. Dooley,* 211 N. Y. 30, 105 N. E. 135; *Sias v. Consolidated Lighting Co.,* 73 Vt. 35, 40, 50 Atl. 554; *Patrick v. Bryan,* 202 N. C. 62, 162 S. E. 207; *Norman v. Porter,* 197 N. C. 222, 148 S. E. 41; *Binewicz v. Haglin,* 103 Minn. 297, 115 N. W. 271, 15 L. R. A. (N. S.) 1096, 14 Ann. Cas. 225; *Wilson v. Daniels,* 250 Mass. 359, 364, 145 N. E. 469.

Assuming that Mercer was authorized to act for the defendant immediately after the accident and to make admissions binding upon it, we think that the particular declarations were properly excluded because they were not admissions of distinct facts but amounted to nothing more than expressions of opinion. The only basis for treating them as admissions is that implicit in them is the opinion of the declarant that his principal is at fault. But an agent has no authority to bind his principal by such an expression of opinion. "The opinion of an agent, based upon past occurrences, is never to be received as an admission of his principals; and that is doubly true when the agent was not a party to those occurrences." *American Life Insurance Co. v.*

*Mahone,* 21 Wall. 152, 157, 22 L. Ed. 593. See, *Fidelity & Casualty Co. v. Haines,* 111 Fed. 337, 340; *New York Life Insurance Co. v. Rankin,* 162 Fed. 103, 108; *Boston & Maine Railroad v. Ordway,* 140 Mass. 510, 512, 5 N. E. 627; *Green v. Boston & Lowell Railroad,* 128 Mass. 221, 235, 35 Am. Rep. 370; *Ohio & M. Ry. Co. v. Stein,* 133 Ind. 243, 31 N. E. 180, 32 N. E. 831, 19 L. R. A. 733.

The declarations of Mercer made at Vancouver a week after the accident were incompetent for the additional reason that there is nothing whatever to show that Mercer was at that time authorized to act for the defendant. Oliver's direction to Mercer to take charge of the accident cannot be construed as a continuing authority to the latter to deal with the plaintiff without assuming a great deal for which there is no evidence.

■ It was error, however, to exclude evidence that Oliver told Mercer to take charge of the accident, because there was an issue under the pleadings as to whether or not the defendant, in the operation of the building, waxed the floors of its tenants' offices, and Oliver's direction to Mercer would be competent as tending to show the defendant's "control of the property or agency causing the injury". 45 C. J., Negligence, 1259, § 828.

The judgment is reversed and the cause remanded for further proceedings.