Argued February 3; affirmed February 25; rehearing denied
April 27, 1948

# POND *v.* JANTZEN KNITTING MILLS

190 P. (2d) 141

*James Arthur Powers,* of Portland, argued the cause for appellant. With him on the brief was Thomas H. Tongue, III, of Portland.

*George Black* argued the cause for respondent. On the brief were Black & Kendall and Platt & Platt, of Portland.

Before Rossman, Chief Justice, and Lusk, Belt, Brand and Hay, Justices.

BELT, J.

This is an action to recover damages for personal injuries. From a judgment in favor of the plaintiff in the sum of $18,500.00, the defendant appeals.

██ The motions for nonsuit and a directed verdict require the statement of the evidence in the light most favorable to the plaintiff. It is not for us to weigh the evidence but to determine whether there is any substantial evidence to support the judgment. Notwithstanding these well established principles, the brief of appellant is replete with argument concerning questions on which there is a conflict in the evidence. There are twenty-four assignments of error covering almost every conceivable question that could arise in a personal injury action. We will endeavor to select those assignments for consideration upon which we think the appellant seriously relies and which we deem to have some merit.

The facts out of which this action arose, so far as are material herein, may thus be briefly stated: The plaintiff, a woman 57 years of age, was employed by the defendant company as an inspector of bathing suits and sweaters. It is claimed by her that while she was proceeding along a passageway of defendant's factory—which was obstructed by miscellaneous carts and boxes of equipment—she tripped on some strips and loops of cloth material on the floor and fell, injuring her left knee. She was going to "check out" when

the accident occurred, and the lights in the large factory room were dim. Plaintiff says that as she went around the obstructions in the passageway, she came suddenly upon the waste material on the floor and when she stepped thereon, she tripped and lost her balance and fell to the floor, striking her left knee.

Defendant was charged with negligence in failing to provide plaintiff a reasonably safe place in which to work. More specifically, defendant was charged with negligence in allowing this passage way "to be cluttered with obstacles and materials constituting a hazard to the use thereof by defendant's employees and particularly to this plaintiff." Plaintiff also alleged that defendant failed to keep the passageway properly lighted.

██ It is fundamental that it was the duty of the defendant company to provide plaintiff a reasonably safe place in which to work. Defendant, having rejected the Workmen's Compensation Act, is deprived of the common law defenses of· assumption of risk, contributory negligence, and fellow-servant. § 102-1713, O. C. L. A. There is evidence that the passage way was in such condition as to constitute a hazard to employees obliged to use it. It is urged by defendant, however, that there is no evidence to establish that it had actual or constructive knowledge of the alleged dangerous condition of the hallway of its plant. Citing in support thereof *Waller v. Northern Pacific Terminal Co. of Oregon*, 178 Or. 274, 302, 166 P. (2d) 488; *Starberg v. Olbekson*, 169 Or. 369, 376, 129 P. (2d) 62; *Lee v. Meier & Frank Co.*, 166 Or. 600, 114 P. (2d) 136; *DeMars v. Heathman*, 132 Or. 609, 616, 286 P. 144. The general rule invoked by defendant has no application to the factual situation involved in this case. Here, the evidence tends to show that the dangerous condi-

tion of the floor was created by the act of the defendant. In the cases above cited, the evidence therein does not so show. Of course, if the defendant, through one of its employees, put the waste material on the floor of the hallway, the defendant employer had knowledge thereof. Since this factory room was occupied and used exclusively by employees, it is, indeed, a reasonable deduction that the alleged condition of the passageway resulted from the act of the defendant. We do not have under consideration a case wherein a person has been injured by stepping on some foreign substance such as on the floor of a lobby of a hotel or of a bank used by the public in general. Under such circumstances a reasonable inference could be drawn from the evidence that the foreign substance was put on the floor by some person other than an employe. Hence, there could be no liability unless the employer had actual or constructive knowledge of the dangerous condition of the floor.

*Waller v. Northern Pacific Terminal Co. of Oregon,* supra, clearly recognized the distinction to which attention has been directed. In that case the plaintiff brakeman brought an action to recover damages for personal injuries against the defendant company on account of its alleged negligence in failing to keep and maintain in a reasonably safe condition a path which he was obliged to use in his work. It was claimed by him that the defendant company caused and permitted certain debris and sticks to be on the path running parallel to the tracks. The court reversed the judgment in favor of the plaintiff and pointed out that there was no evidence that the sticks and debris were put on such premises by the defendant. Switching operations were conducted by various railroad companies using the yards. There is no evidence that

the defendant knew or ought to have known of the presence of the sticks and debris in question. The court, in reversing the judgment, thus announced the well established rule:

"The rule is firmly established that where plaintiff slips upon an object upon the premises of the defendant, plaintiff must, in order to establish liability, show that the defendant or his agent put the dangerous object there, or that they knew or by the exercise of reasonable diligence could have known that it was there and failed to exercise diligence to remove it."

We confess that it is somewhat difficult to distinguish *DeMars v. Heathman,* supra, relied upon by appellant. In that case, the plaintiff employee was injured when she fell on certain steps leading to the back entrance of the hotel operated by the defendant Heathman. It was claimed by her that she was caused to fall by reason of the "grease, dirt and water" on the stairway. It is not clear from the opinion or the record in the case that such stairway was used exclusively by the employees. If it was used only by the employees, then we can see no material distinction between that case and the one at bar. The court, in reversing the judgment for the plaintiff, must have done so on the theory that the condition of the stairway was caused by some person other than an employee and that there was no evidence that the defendant knew or ought to have known of such condition of the premises prior to the time of the injury.

We think the instant case is governed by the principles announced by this court in *Briggs v. John Yeon Co.,* 168 Or. 239, 122 P. (2d) 444 (floor improperly waxed); *Saunders v. Williams & Co.,* 155 Or. 1, 62 P. (2d) 260 (floor improperly oiled); *Hesse v. Mittelman,*

145 Or. 421, 27 P. (2d) 1022 (floor improperly oiled). It is observed that in the last cases above cited the dangerous condition of the floor was caused by an act of the defendant therein.

■ There is evidence that as a result of this fall, which occurred April 29, 1943, plaintiff was seriously and permanently injured. Dr. Leo S. Lucas, who is conceded to be an eminent orthopedic surgeon, testified that plaintiff had sustained a fracture of the tibial spine, being that part of the tibia which extends into the knee joint. Dr. Lucas performed two operations on plaintiff's knee joint. The first operation was April 4, 1944, at which Dr. Lucas said he found a general flaking of cartilage in the knee joint and that he removed pieces thereof with a sponge, "cleaning the surface as well as we could." He also found certain cartilage loosened at its anterior end and removed the same. On January 16, 1945, Dr. Lucas performed the second operation removing adhesions of the patella, or knee cap, from the femur. It is his opinion that plaintiff at the time of trial had no more than 10 to 15 degrees motion in the knee and such motion would be painful. He further testifed:

"Q Now, doctor, could you give us your opinion as to the prognosis of this case, that is, what is in the future for Mrs. Pond with reference to this knee disability?

"A It has been my opinion for several months, and I have so indicated to the patient, that she should have an arthrodesis of the knee joint. An arthrodesis means a stiffening of the knee joint.

"Q Is that an operation?

"A Yes.

"Q Following that, does that mean that the leg will be stiff, there will be no motion whatever in the knee?

"A That is right.

"Q  I will ask you to state whether you believe Mrs. Pond is permanently disabled—
"A  Yes."

Dr. Lucas designed a steel brace for plaintiff's left leg which she has worn continually. She uses crutches when walking.

Dr. Lucas also testified that plaintiff's condition was due to the fall in question and that it was not to be attributed to her varicose veins or arthritis.

After the defendant company rejected the Workmen's Compensation Law, it procured a policy of employers' liability insurance from the Saint Paul Mercury Indemnity Company, whereby the insurance company agreed to compensate injured workmen on the same basis as provided under the Workmen's Compensation Act. When the accident occurred, it was reported to the insurance company and it forwarded, for execution by the plaintiff, the following "Compensation Agreement with Jantzen Knitting Mills," dated June 24, 1943:

"KNOW ALL MEN BY THESE PRESENTS, That in consideration of SAINT PAUL MERCURY INDEMNITY COMPANY paying to me compensation rates provided in the Workmen's Compensation Laws of the State of Oregon, as at present in force, during the time I am totally incapacitated for labor as a result of an injury received by me on the 29th day of April, 1943, while in the employ of JANTZEN KNITTING MILLS and also at the rate provided for in said Workmen's Compensation Act for any permanent, partial or total disability that may result from said injury, I hereby agree to release and hold harmless the said JANTZEN KNITTING MILLS and the officers and employees thereof, from any and all liability for loss or damage sustained by me or which I may hereafter sustain as a result of said injuries.

"I further agree to abide by the decision of Dr. J. A. Pettit, the attending physician, as to the time when I am able to work, and the same shall be final, and when compensation at the rates herein specified has been paid to me, I hereby agree that I shall have no further claims against JANTZEN KNITTING MILLS as result of said injuries. I hereby further agree that the rate for temporary total disability in this case shall be $2.02 per day and that the rate for permanent, partial or total disability shall be such as is provided in said Workmen's Compensation Act for such resulting permanent disability.

ADA POND.

"In the presence of:
  MARY GERMAN."

Three payments aggregating $191.90 were made to plaintiff as "compensation for loss of time from work" and then, on advice of Dr. Joseph A. Pettit, a physician and surgeon of recognized ability, were discontinued for the reason that the injuries of which the plaintiff complains were not the result of falling in the factory. The plaintiff was sent by the defendant to Dr. Pettit for treatment soon after the accident and prior to the time that she became a patient of Dr. Lucas. It was the opinion of Dr. Pettit that there was no fracture of the tibial spine; no injury to any cartilage in the knee; and no injury to the patella. He diagnosed the plaintiff's condition as being osteochondritis, or an inflammation of the bone and ligaments adjacent thereto—due to disease and not trauma.

At this juncture it might be well to say that this court is not called upon to determine which of these two medical experts is correct, as it is not the function of the court on this appeal to weigh conflicting evidence. Suffice it to say that this question of fact

was decided by the jury, as evidenced by its verdict, in favor of the plaintiff.

■■ Defendant set forth in its Answer the above "Compensation Agreement" as a complete defense to this action. Plaintiff alleged in her Reply that such instrument was procured through fraudulent representations. Plaintiff also asserts that defendant has not shown performance on its part and that discontinuance of payments entitles her to be relieved from any agreement to release defendant from liability.

As we view this "Agreement," it is merely an offer of plaintiff to release defendant from liability on condition that it will compensate her for injuries sustained as provided in the Workmen's Compensation Act. Assuming that this conditional release was not procured by fraud, we think the defendant company could not rely thereon as a defense without showing full and complete performance, and this it has not done. At most, defendant has only shown partial performance. When the defendant saw fit to discontinue payments to plaintiff by reason of the opinion of Dr. Pettit that the plaintiff's condition was not caused by any injury sustained by her as alleged in the complaint, defendant acted at its peril. The jury decided such question adversely to the contention of the defendant. It is observed from the instrument in question that plaintiff did not agree to abide by the decision of Dr. Pettit as to whether or not her injuries were the result of falling in defendant's factory.

Since plaintiff conditionally released the defendant from liability, such release would only take effect upon the performance of the condition therein specified. A release granted on condition has no force or effect if the condition is not performed. *Louisville &*

*Nashville Rr. v. Cox*, 133 Ga. 763, 66 S. E. 1088; *Terre Haute & Indianapolis Rr. v. Flanigan*, 94 Ind. 336; *Stowe v. United States Express Co.*, 179 Mich. 349, 146 N. W. 158; *Keiser's Appeal* 81 Pa. 375, 2 Wkly N. C. 515; *Memphis v. Brown*, 20 Wall. 289, 22 L. ed. 264. The rule applicable herein is thus set forth in 2 Restatement, Contracts (1932) § 404:

"(1) A release which states that it shall take effect on the occurrence of a condition precedent is operative as a discharge on the occurrence of the condition."

"Comment on Subsection (1):

"b. A release subject to a condition precedent is not effective as a discharge until the condition occurs. When it occurs the writing takes effect in the same way as if a release absolute in terms were then given."

We conclude that there is substantial evidence tending to show negligence and that such negligence was the proximate cause of plaintiff's injuries. We also conclude that defendant can not rely on the "Release" as a defense to this action. It follows that no error was committed in denying the motions for nonsuit and directed verdict. The court properly submitted the cause to the jury.

In view of our conclusion relative to the "Release," it is unnecessary to determine the close question as to whether it was procured through fraudulent representations. Neither will it be necessary to consider numerous assignments of error relating to the issue of fraud.

■■ Error is based upon the refusal of the court to admit in evidence a photograph, offered by defendant, of the knee and leg of plaintiff taken by Dr. Thomas Saunders on October 12, 1943. Dr. Saunders identified

the picture and said it was a true representation of the condition of the plaintiff's knee and leg, and showed that she had "definite varicose veins at the time the picture was taken." Counsel for defendant stated that the picture was offered for the purpose of impeaching plaintiff, who, he claims, "stated that she didn't have varicose veins." It was also offered for the purpose of explaining the diagnosis of Dr. Pettit and Dr. Saunders. The record discloses that plaintiff never denied having varicose veins. Indeed, she admitted going to a Dr. Rippey on December 6, 1943, to have a "vein tied up." All medical testimony, whether on behalf of plaintiff or defendant, conceded that plaintiff had varicose veins. No doctor claimed, however, that varicose veins had any connection with the condition of the knee. Dr. Pettit and Dr. Saunders testified at length concerning the condition of the plaintiff. If the photograph had been received in evidence, of what assistance would it have been to the jury in determining the cause of the injury to the knee? The rejection of the photograph was not prejudicial to the defendant. If it had been received, in all probability it would have tended to arouse sympathy for the plaintiff. While we do not altogether agree with the reasons given by the circuit court for rejecting this offer, we think no abuse of discretion has been shown. *Shaver Forwarding Co. v. Eagle Star Insurance Co. et al.*, 177 Or. 410, 417, 162 P. (2d) 789; *DeWitt v. Sandy Market, Inc.*, 167 Or. 226, 248, 115 P. (2d) 184. As said in *Knapp v. Standard Oil Co.*, 156 Or. 564, 576, 68 P. (2d) 1052:

> "The action of the trial court in admitting or refusing to admit photographs in evidence is largely a matter of discretion of the trial court which will not be disturbed unless abused."

■ It is claimed that the court erred in failing to give the following requested instruction:

"I instruct you that the law looks with favor upon agreements that are made to the end of avoiding litigation, and the type of compensation agreement here is one that can be lawfully entered into by an injured employee such as the plaintiff with an employer such as the defendant."

In view of the fact that plaintiff claimed the agreement was entered into by reason of fraudulent representations and, since she denied execution of the same, we think the above instruction might well have been misleading. Furthermore, we think it is doubtful whether the law would look with favor upon an agreement including the unusual provision that the injured employee would accept as final the decision of a doctor, selected by the employer, as to when she would be "able to work."

■ Defendant claims misconduct on the part of counsel for plaintiff in making the following argument to the jury:

"After all the sweat and work for ten days to get these people to perform an agreement, to get this great Saint Paul Mercury & Indemnity Company, this eastern corporation, that takes the money from Jantzen Knitting Mills and promises to pay the damages imposed by law up to $30,000 for an accident,—make them pay it. Why shouldn't they? What right have they to come in here and fight a poor lady like that and not have any more substance to a case, and justifications, than these things which have now been disproved. * * *"

No timely objection was made to this argument. It was only after the opening argument had been concluded that counsel for defendant complained to the court, during recess and in chambers, that it was

improper as tending to arouse the prejudice of the jury. There was no motion for a mistrial. Counsel for defendant apparently was willing to speculate on the verdict of the jury. That the objection must be timely or it may be deemed to be waived, see *Arnwine v. Clyde,* 182 Or. 311, 187 P. (2d) 670.

The insurance policy was introduced by the defendant, and there was nothing improper in counsel for plaintiff referring to it.

In reference to this argument, counsel for defendant said:

"I am not objecting to your referring to the policy; I am objecting to what you are doing in telling this jury, 'Well, it is some insurance company, some foreign corporation, that has to pay. It won't cost Jantzen Knitting Mills a penny.' Now, Jantzen Knitting Mills is the defendant here, and we are entitled to an instruction that remarks of that type should be disregarded, because that is purely put in there for prejudice."

But no motion was made.

The court well said:

"There is nothing before me now, gentlemen. Your statement is in the record. We will proceed with the argument."

Finding no reversible error, it follows that the judgment is affirmed.