Motion to strike bill of exceptions denied December 2, 1930; argued and submitted on merits November 18, 1931; affirmed January 5; rehearing denied February 16; motion to recall mandate denied March 1, 1932

SENNER *v.* DANEWOLF ET AL.

(293 P. 599, 6 P. (2d) 240)

*Collier, Collier & Bernard* and *William G. Smith,* all of Portland, for the motion.

*McDannell Brown,* of Portland, *Charles J. Zerzan,* of Salem, and *C. M. Idleman,* of Portland, opposed.

ROSSMAN, J. The plaintiff, who was successful below has moved to strike from the files the bill of exceptions filed by the defendants on the ground that the time within which it was presented to the circuit court was in violation of Oregon Code 1930, § 2-703. The material provisions of that section of our laws are:

"A proposed bill of exceptions may be tendered by presenting it to the clerk of the court within sixty (60) days after the entry of the judgment or decree, or within such further time as may be granted by order of the court."

The judgment was entered April 23, 1930; thus the sixty days granted by the above enactment to the defendants as a period within which they could present for settlement their bills of exceptions, expired June 22, 1930. No bill was tendered, however, within that time, nor was any allowance of further time obtained within the sixty-day period; but, on July 15 the defendants obtained an order of the circuit court granting them "three weeks additional time in which to submit bill of exceptions." Within the latter time the bill was presented.

■■ The sole question upon which our conclusion depends is whether the circuit court was without power

to grant further time after the original sixty-day period had expired; or stated otherwise, the issue for determination is, must a prospective appellant obtain, before his original period has elapsed, the privilege of filing a tardy bill. The act which governs the outcome of this issue certainly does not expressly require that "the further time" must be procured before the original time has elapsed; nor does it do so by implication. After granting to all prospective appellants sixty days for the above purpose, it makes provision for delayed appellants by permitting them to file their bills "within such further time as may be granted by order of the court." The sixty-day period is allowed to all, but the "further time" is available only when granted by an order. Whether it should be allowed is dependent upon the sound discretion of the circuit court. So far we have considered all of the language of the statute, and still have found no requirement that the tardy appellant must obtain further time within the sixty-day period, and hence conclude that there is none. Possibly the Legislature believed that occasionally it would be as unjust to compel the appellant to obtain within the sixty-day period the privilege of filing a delayed bill as to file the bill within that time.

The mere fact that the order granting the further time was obtained ex parte, if that is a fact, and does not recite the reasons which moved the court into action does not show an abuse of discretion. All presumptions are in favor of regularity, and it is incumbent upon the party who attacks the order to prove an abuse of discretion.

It follows that the motion must be denied.

BELT, BEAN, BROWN, RAND, and KELLY, JJ., concur.

COSHOW, C. J. dissenting.

I regret that I cannot subscribe to the majority opinion in this case. Believing as I do that said opinion in effect nullifies the intention of the legislature in amending Or. L., § 171, General Laws, 1929, chapter 356, I believe it to be my duty to express the reasons for my dissent.

The legislature must have had some intention, some direct purpose when it enacted said chapter 356. Prior to the enactment of that chapter the time for certifying a bill of exceptions rested in the discretion of the trial judge: *Weinstein v. Wheeler,* 127 Or. 406 (257 P. 20, 62 A. L. R. 574); *Vawter v. Rogue River Valley Can. Co.,* 124 Or. 94 (257 P. 23, 262 P. 851); *Walker v. Fireman's Fund Insurance Co.,* 122 Or. 179 (257 P. 701); *Sitton v. Goodwin,* 119 Or. 74 (248 P. 163). When the circuit court had adopted rules governing the presentation of bills of exceptions the judge of the court was bound by such rules: *Oxman v. Baker County,* 115 Or. 436, 439 (234 P. 799, 236 P. 1040).

Oregon Code 1930, § 2-703, General Laws, 1929, chapter 356, was enacted for the purpose of making uniform throughout the state the time in which bills of exceptions should be presented as a matter of right. The desired uniformity would be absolutely prevented by the majority opinion. In the instant case the judgment was entered on the 23d day of April, 1930. Time in which to present the bill of exceptions under said section 2-703 expired on the 22d day of June. An order extending the time for filing said bill of exceptions was not made until the 15th day of July, twenty-two days after the time had expired. The order extending the time was made without notice to respondent and without any showing of a reason therefor.

In another case pending in this court at this time a bill of exceptions was not signed until almost a year after the judgment was rendered and entered. The mischief intended to be remedied by the enactment of said chapter 356 is not accomplished if the construction placed thereon by the majority opinion obtains. The two pending cases referred to demonstrate that the statute will, under the majority opinion, encourage confusion rather than make for uniformity. The successful party in the trial court is ignored. A different question would be presented if such opposing party had notice of an application for extension of time or consented thereto.

"Where the time for filing bills of exceptions is limited by statute, they are void if filed beyond the expiration of the statutory time,—at least unless the right to have them filed within the prescribed time is waived by the adverse party." Thompson on Trials (2d Ed.), 2073, § 2814.

"It is competent for the parties to stipulate that the bill of exceptions may be filed on or before a given date after the expiration of the term." 2 Thompson on Trials, (2d Ed.), 2073, § 2813.

Some courts hold that an order extending time will not be made on such stipulations. Note 39 to said section 2813. See also id. 2074, section 2815. Neither waiver nor consent is involved in the instant case.

The certificate of the trial judge to the bill of exceptions is regular. No presumption should be indulged where such presumption would contradict the record: *Western Savings Co. v. Currey,* 39 Or. 407, 413 (65 P. 360, 87 Am. St. Rep. 660), where is written:

"The presumption has application where there is nothing to show what has been done, but here it is perfectly patent that the clerk has not done that which the law has required of him."

The record in the case at bar discloses affirmatively what actions were taken. There is, therefore, no occasion to invoke presumptions. The record here without ambiguity states the order extending the time was made on motion of the appellants and defendants. They are the same parties. There is no foundation, then, for the presumption that such extension of time was made with the consent of respondent. The language of the certificate to the effect that the bill of exceptions was presented within the time cannot overrule the record, which clearly shows that the order attempting to extend the time was made after the time had expired. An order to be of any effect or force extending time must be made within the period when the act should be done.

As it is well said in the case of *State v. Scott*, 113 Mo. 559 (20 S. W. 1076), cited with approval in *Oxman v. Baker County*, above, the word " 'extended', as employed in the statute, means 'prolonged', and of course a prolongation of time cannot occur after the time originally limited has expired." In order to extend the period such order must be made within the period to be extended. Only in this manner can the statute accomplish the principal purpose for which it was enacted.

The construction placed upon the act by the majority opinion leaves the procedure for certifying a bill of exceptions as it was before the 1929 amendment except that it makes delay. No rule of the circuit court for fixing the time for filing a bill of exceptions prescribed a longer period after judgment than thirty days, so far as I have been able to learn. An examination of the rules of a number of the different circuit courts in this state reveals no case in which more than thirty days was allowed in which to file a bill of exceptions. The statute permits sixty days after judgment to present a bill of exceptions.

The most general complaint in this state about the courts, both in the circuit courts and in the supreme court, has been delay in trying cases. The only effect of the 1929 amendment, General Laws, chapter 356, as construed by the majority opinion is to make more delay. Under the present practice of taking evidence in the circuit courts in shorthand and extending stenographic notes to aid in preparing bills of exceptions the legislative assembly recognized that thirty days would be too short a time in many cases. It, therefore, extended the time to sixty days in order to make the provision about time for presenting bills of exceptions uniform throughout the state. That purpose, I repeat, will not be accomplished and cannot be by the construction placed upon the statute by the majority opinion.

The motion to strike the bill of exceptions should be allowed.

On the Merits

(6 P. (2d) 240)

*McDannell Brown,* of Portland, and *Charles J. Zerzan,* of Salem (C. M. Idleman, of Portland, on the brief), for appellants.

*Henry E. Collier,* of Portland (Collier, Collier & Bernard and William G. Smith, all of Portland, on the brief), for respondent.

CAMPBELL, J. Defendants Henry Danewolf and Marie Danewolf are the owners of a certain lot and building thereon at the northwest corner of the intersection of Failing street and Thirteenth street, Portland, Oregon. The building is a one-story concrete structure used as a store, fronting south on Failing street. These premises were leased and occupied by defendants, Louis Stedding and Jane Doe Stedding, his wife, as a grocery store, with living apartments in the rear part of the building. The living apartments were reached either through the store, during business hours, or by a side door opening on a driveway and walk immediately to the west of the building and leading from garages in the rear to Failing street. This driveway is six and a half feet wide with a curb on the west side four inches high, and a curb on the east side seven inches high. There is a space between the driveway and the building three feet nine inches wide, separated from the driveway by the curb on the east side of the driveway. This walk, immediately in front of the side door, is fourteen and one-half inches lower than the curb. From the space in front of the door a step four inches high leads to the left towards Failing street and two steps lead to the right toward the garages, as one comes out of the side door. From the step leading to Failing street the walk is practically level, with the curb ten inches high between the walk and the driveway. About seven feet southerly and towards Failing street from the entrance to the side door is an open stairway leading to the basement, with a lower landing place at the northerly end about six feet below

the level of the walk. There is no curbing, barrier or railing around any part of the stairway. The opening in the walk occupied by the stairway is about nine feet by two and one-fourth feet, lying lengthwise with the building, with the steps leading down from the southerly end, thus leaving between the outer edge of the opening and the curbing of the driveway about eighteen inches of the walk. From the stairway to the street, about ten feet, this paved space has all the appearances of a sidewalk and connects with the sidewalk on Failing street.

About 8 o'clock on the evening of March 29, 1929, the plaintiff, a boy 8 years old, came to the store to make a purchase of groceries. He tried to enter at the front door but was unable to open it. Mrs. Stedding, one of the lessees, who was within the storeroom and saw his attempt to gain entrance, directed him to enter the store through the side door, which he did. He bought a loaf of bread and started home the way he came. When he got through the side door, he turned left and proceeded towards Failing street and fell into the stairway opening and was injured. He brought this suit to recover damages for that injury.

The case was tried to a jury. At the close of plaintiff's case the appealing defendants moved for an involuntary non-suit, which was denied. When all the evidence was submitted, the appealing defendants moved for a directed verdict in their favor which was also denied. The cause was then submitted to the jury who returned a verdict for plaintiff against all the defendants in the sum of $5,100, and judgment was entered thereon. Appellants moved to set the verdict aside as to themselves, which motion was also denied.

Defendants Henry Danewolf and Mary Danewolf appeal. They base error on the rulings of the court in

denying said motions. Before the case was submitted to the jury the appellants requested the court to instruct the jury to return a verdict in favor of the appealing defendants. This requested instruction was merely a renewal of the motion for a directed verdict in favor of the appellants. There was a special verdict submitted to and returned by the jury.

"1. The door to which plaintiff was invited did lead to premises occupied as a residence by the Steddings.

"2. The defendants Danewolf did not authorize expressly and implicitly the use of said premises for other than residential purposes.

"Unable to answer to question character No. 2.

"James A. Foreman,
"Foreman."

The foregoing special findings are as set up in appellants' abstract of record and to which the briefs of counsel for either party are directed. The original record sent up by the clerk is somewhat different but raises the same questions.

■ This question No. 2 was misleading and too indefinite. It did not define what part of the premises was referred to. The store and living apartments were in the one building on the same floor and all connected by doors. There would be no inconsistency with the general verdict whichever way this question was answered.

■ The real question presented by the record in this case is: Is the landlord liable to the guests or invitees of his tenants upon the demised premises by reason of a dangerous condition of the premises which existed at the time of leasing and of which both landlord and tenant had knowledge, but of which the injured guest or invitee was ignorant?

■ Reasonable minds will agree that the construction of the pavement between the driveway and the building would lead one to believe that it was intended for a sidewalk. It was an invitation to anyone using the side door as an exit to turn either to the right or left. That must have been the purpose of constructing steps. One would not likely step over a curb fourteen and one-half inches high when there were ordinary steps leading in either direction. If one's objective were the garages, he would naturally turn to the right and up the two steps. If his objective was to reach Failing street, just as naturally would he turn to the left and proceed in that direction using the four-inch step. When he stepped up the four-inch step, there was still a ten-inch curb dividing the paved space from the driveway. One would not be likely to step over a ten-inch curb to walk in a driveway manifestly constructed for the use of automobiles and just wide enough for the purpose intended.

The dangerous condition of the walk and open stairway existed at the time the premises were let and was brought about and entirely produced by the landlord, and he remains liable for injury to third persons, lawfully on the premises, by reason of the dangerous condition which he created, notwithstanding the leasing: *Bailey et al. v. Kelly*, 86 Kan. 911 (122 P. 1027, 39 L. R. A. (N. S.) 378) ; *Larson v. Calder's Park Co.*, 54 Utah 325 (180 P. 599, 4 A. L. R. 731). The law is well and succinctly stated in:

"Therefore, if any responsibility in this case attaches to the defendant, it can not be based upon any contract obligation, but must rest entirely upon its *delictum*. If a landlord lets premises and agrees to keep them in repair, and he fails to do so, in consequence of which any one lawfully upon the premises suffers injury, he is responsible for his own negligence

to the party injured. * * * If he creates a nuisance upon his premises, and then demises them, he remains liable for the consequences of the nuisance as the creator thereof, and his tenant is also liable for the continuance of the same nuisance. * * * And there is no distinction stated in any authority between cases of a demise of dwelling houses and of buildings to be used for business purposes. The responsibility of the landlord is the same in all cases. If guilty of negligence or other *delictum* which leads directly to the accident and wrong complained of, he is liable; if not so guilty, no liability attaches to him." *Edwards v. N. Y. & H. R. R. Co.,* 98 N. Y. 245 (50 Am. Rep. 659); *Copley v. Balle,* 9 Kan. App. 465 (60 P. 656); See note to *Griffin v. Jackson Light Etc. Co.,* 92 Am. St. Rep. 499.

"There is a wide distinction between acts lawful in themselves, done by one upon his own premises, which *may* result in injury to another if not properly done or guarded, and those which in the nature of things *must* so result. In the former case a party could only be made liable for actual negligence in the performance of the act or mode of maintaining it, while in the latter case he would be liable for all the consequences of his acts, whether guilty of negligence or not. The one act only becomes a nuisance by reason of the negligent manner by which it is performed or maintained, while the other is a nuisance *per se.*" Wood's Law of Nuisances (2d Ed.), 141.

In the instant case it is admitted that the landlord had full knowledge of the condition of the premises at the time of leasing.

Finding no error, the judgment will be affirmed.

BEAN, C. J., BROWN and BELT, JJ., concur.