Argued September 20; reversed October 9, 1934

## LEWIS *v.* JAKE'S FAMOUS CRAWFISH, INC., ET AL.

(36 P. (2d) 352)

*Francis E. Marsh,* of Portland (Wilbur, Beckett, Howell & Oppenheimer, of Portland, on brief), for appellant.

*Marvin K. Holland,* of Portland, for respondent.

BAILEY, J. This action was instituted by the plaintiff against the defendants Jake's Famous Crawfish, Inc., a corporation, Burnside company, a corporation, and B. B. Wojcik, doing business as York hotel, to recover damages for injuries sustained by plaintiff in falling through an opening in the sidewalk into a passageway leading from such opening to the basement of the adjacent building. Voluntary nonsuits were taken as to all the defendants except the Burnside company. From a judgment in favor of the plaintiff and against that defendant this appeal is prosecuted.

The accident which forms the basis of this action occurred on August 3, 1932. On that date and for many years prior thereto the defendant Burnside company was the owner of a four-story brick building located at the southwest corner of Twelfth and Stark streets in Portland, Oregon. A part of the ground floor on Twelfth street and the basement immediately thereunder were occupied by Jake's Famous Crawfish, Inc., hereinafter to be referred to as the lessee. The upper part of the building was occupied by the defendant Wojcik as the York hotel.

In the sidewalk on the east side of the building and directly in front of the part of the premises occupied by the lessee there was an opening through the sidewalk for the use of the lessee and its employees in receiving delivery of supplies to be used in its kitchen, which was located in the basement. The outer edge of this opening was within eight or ten inches of the outer edge of the curbing. This basement entrance was covered by two iron doors extending from east to west across part of the sidewalk next to the street. The doors were about sixty-three inches in length and their combined width was approximately fifty-two inches.

When closed they overlapped at the center of the opening, were level with and constituted part of the sidewalk, and were fastened underneath by a bar so that they could be opened from the inside only. The doors opened outward from the center, and upward to a height of about twenty-six inches above the sidewalk, and were held in a vertical position by an iron bar inserted through eyelets bored in the flanges on the inside of the doors. This bar also served to protect pedestrians on the sidewalk, passing between the doors and the hotel, from falling into the opening when the doors were raised. On the curb end of the opening there were no holes in the flanges of the doors similar to those on the inner end where the bar was inserted. Deliveries were made to the basement at the curb end of the opening.

About eleven-thirty o'clock, p. m., on August 3, 1932, the plaintiff and her escort drove up and parked their car alongside the curbing immediately in front of this opening. At that time the doors were raised, and the plaintiff, in stepping from the automobile to the sidewalk, fell into the aperture, suffering injuries which are the basis of this action.

That part of the building, the basement thereunder and the passageway to the opening above referred to, had for many years been leased by the Burnside company to the restaurant. No one except this lessee and its employees had access to the cellarway under the sidewalk, or the use of the trapdoors.

The last written lease between these parties was dated July 17, 1930, and expired on July 1, 1932. According to the terms of this lease the lessee was to pay a rental of $275 per month, and before the term

had expired the rent was reduced to $150. The lessee promised, among other things, to make all repairs necessary to the premises during the term of the lease. Prior to, or about the time of, the expiration of the lease, it was understood between the lessor and the lessee that the latter would continue to occupy the premises under the terms and conditions of the written lease above mentioned, until terms and conditions of a new lease should be decided.

In front of the lessee's place of business and within eight or ten feet of the trapdoors in the sidewalk there was a two-hundred-watt electric light. In addition, considerable light was thrown upon the street and sidewalk from the windows of lessee's restaurant and from an arc light at the intersection of Twelfth and Stark streets. There is no question but that the sidewalk and trapdoors were properly constructed, and no claim is made that the defendant was in any way guilty of negligence in their construction, beyond the acts of negligence charged against the defendant, which acts, in the language of the trial court, were the following: "in failing to have a place for a horizontal bar on the outside or next to the curb" and "not providing a screen or cover over the shaft or opening as a protection to pedestrians and people alighting from automobiles to the sidewalk".

At the close of the trial the defendant moved for a directed verdict, on the ground that the evidence failed to show any acts of negligence on the part of defendant which could be said to be the proximate cause of plaintiff's injuries. The denial of this motion is the basis of the only assignment of error urged on appeal.

Jake's Famous Crawfish, Inc., was occupying and in control of the premises where the accident happened,

under the terms and conditions of the written lease hereinbefore mentioned. That company, with the consent of the owner of the property, continued in possession of the premises after the date specified for the expiration of the lease, but on the distinct understanding with the owner that its occupancy continued under the terms of the written lease.

The proximate cause of plaintiff's injuries was the lessee's negligence in permitting the trapdoors to remain open without guard or barricade on the outer or street end of the opening, and not any defect in the construction of the trapdoors.

The plaintiff in the case of *Dammeyer v. Vorhis*, 63 Ind. App. 427 (113 N. E. 764), brought an action against the owner of certain property, for personal injuries received in falling into a "cellarway leading from a sidewalk to a basement of a building in the city of Indianapolis". The complaint alleged that the first floor and the basement of the building were leased to a tenant; that the owners had provided and maintained "iron grating doors over said opening, which had to be lifted and laid back to a point beyond the perpendicular to gain access to the basement; that said owners negligently failed to provide any guard or light around said opening and that a guard could have been erected to protect pedestrians against injury when said cellar doors were open; that said Stark [the tenant] opened said doors on said night and negligently failed to provide any guard or danger signals"; and that while the doors were so open the plaintiff fell into the opening and down the stairway. A demurrer to this part of the complaint was sustained and on appeal it was held that no error was thereby committed.

In passing upon this question, the appellate court said:

"Since it is not contended otherwise than that the cellarway and doors were properly constructed, were in good condition, and that the walk over the doors was safe when the doors were closed, during all the time appellants owned the building, it can not be held that the premises constituted a nuisance *per se,* but became so by the act of the tenant in leaving the doors open. Under the facts alleged in the complaint, the question of duty to repair and negligence in failing to repair does not arise, but the only question is as to the duty to guard the opening when open. This duty, we must hold, devolved upon the tenant."

After reviewing a great many other cases the Indiana court there quoted with approval from the opinion in *Taylor v. Loring,* 201 Mass. 283 (87 N. E. 469), as follows:

"The defendants had nothing to do with the care and management of the premises at the time of the accident. The only ground for a contention that they were liable for the accident is that the mode of construction of the vestibule made it a nuisance by reason of the use for which it was intended and to which it was put by the tenants in accordance with the plan and purpose of the defendants when they executed the lease. * * * If at any time there were conditions which made it dangerous, the defendants had a right to assume that the tenants would use it in such a way as would be safe, either by keeping it closed, or putting a barrier before it, or would otherwise protect those who might be in danger from it. The defendants had no reason to expect such a use of the premises by the tenants as would make the vestibule a nuisance or expose to danger persons lawfully using the premises."

*Lucid v. Citizens' Investment Co.,* 49 Cal. App. 257 (193 P. 161), concerned an accident substantially similar to that in the case at bar, and it was charged

that the defendant who owned the property "carelessly and negligently constructed the said trapdoor in such a manner that in the operation thereof said trapdoor did not of itself and by the manner of its construction create in itself and by its use a guard or protection to a person in said premises from falling through said hole into said basement". A demurrer to the second amended complaint was sustained and upon appeal the judgment was affirmed. The court in rendering its decision quoted with approval the excerpt hereinbefore quoted by us from the case of *Dammeyer v. Vorhis*, supra, and further observed:

"The established criterion by which it is to be determined whether the landlord or owner of demised premises is legally liable to a party injured on such premises through a nuisance existing thereon while they are in the exclusive occupancy and control of a tenant is, in general terms, stated in Kalis v. Shattuck, 69 Cal. 593, 597, 11 Pac. 346, 348 (58 Am. Rep. 568), quoting from Gandy v. Jubber, 5 Best & S. 73, 485, as follows: 'The nuisance must be one which is in its very essence and nature a nuisance at the time of the letting, and not something which is capable of being thereafter rendered a nuisance by the tenant. * * * The nuisance must be, if I may so term it, a normal one.' "

In *Fehlhauer v. City of St. Louis*, 178 Mo. 635 (77 S. W. 843), the plaintiff joined as defendants the city of St. Louis and the owner and the tenant of the property, in a suit for damages for injuries sustained by her in falling through a cellar door in a sidewalk. The complaint alleged that it was the duty of all the defendants "to carefully guard and fence said opening or excavation or to cause the same to be carefully guarded and fenced, so that the said street and sidewalk should be reasonably safe for the public and for

persons passing along and using the same''. It was further alleged that the defendants left the opening unguarded and without sufficient, if any, barriers to prevent passers-by from falling into it. The court instructed the jury to return a verdict for the defendants and upon appeal the judgment was affirmed. In passing upon the correctness of the trial court's ruling, the opinion observed:

''The relation of Schrick and the Wallhausers to the premises was that of a landlord whose tenant was in the actual occupation of the premises. The rule in such cases is that the 'landlord's liabilities in respect of possession are, in general, suspended as soon as the tenant commences his occupation. But when injuries result to a third person from the faulty or defective construction of the premises, or from their ruinous condition at the time of the demise, or because they then contain a nuisance, even if this only becomes active by the tenant's ordinary use of the premises, the landlord is still liable, notwithstanding the lease.' Taylor, Landlord and Tenant (8th Ed.), § 74. As there was no fault or defect in the construction of this cellarway and door, and it was in good repair and condition at the time of the demise to Schrick and from him to R. Thomas Nester, and at the time of the accident, the only possible ground upon which these landlords could be held liable to plaintiff's action would be on the ground that the cellarway and door were *per se* a nuisance, in the ordinary use to which they were adapted, and for which they were intended, and counsel for plaintiff so contends, but we do not think this contention can be maintained.''

*Morrison v. McAvoy,* 137 Cal. XIX (70 P. 626), involved an accident similar to the one here under discussion. The court there said:

''As to defendants Brown, Hugh McAvoy, and Peladeau, the complaint fails to show any liability. The

iron doors appear not to have been an obstruction when closed, and no defect in the manner of their construction is alleged, and it is averred that they constituted part of the pavement when closed. Such doors, as means of ingress and egress to and from the basement of buildings in towns and cities, are not unusual, and do not constitute a nuisance *per se,* and are not forbidden by the ordinance pleaded. It is the failure to properly use the doors that introduces the element of danger, and for this improper use the tenant in possession alone is liable. If the complaint shows that the tenant, J. C. McAvoy, failed to protect the opening when the doors were open, he alone must answer the consequences. The principles governing such cases were fully discussed in Rider v. Clark, 132 Cal. 382, 64 Pac. 564.''

See, also, in this connection, annotations in 50 L. R. A. (N. S.) at page 307, under the heading ''Where injury is due to tenant's negligent use''.

If the owner of the property in the case at bar were required to keep the doors in repair, and if the accident had happened because of failure to keep the doors free from all defect, an entirely different question would be presented.

These sidewalk doors were in the exclusive control of the lessee. The owner of the property had no right to use them or to compel the lessee to maintain barriers or guard at the entrance, nor was it the owner's duty to furnish barriers or provide guards. It must be presumed that the doors were properly constructed, as there is no showing to the contrary. The record contains no evidence that other sidewalk doors were provided with ''a place for a horizontal bar on the outside or next to the curb'', or that it was the custom to provide ''a screen or cover'' for the opening. There were numerous ways in which the tenant could have protected the opening other than the method suggested

by the plaintiff. Moreover, such a bar, if kept there at all times, would undoubtedly interfere with the use of the passageway; and when the opening would not be in use the proper course for those in control to take would be to close them.

■ It is common knowledge that sidewalk doors, similar to those involved in this action, are in general use in the city of Portland, and it must be presumed, so far as this case is concerned, that their maintenance and use do not constitute *per se* a nuisance. There was nothing inherently dangerous in the construction of these doors, or in their use. The accident occurred not through the fault of the owner of the premises but from the negligence of the lessee in permitting the doors to remain open when not in use and at a time when the public was entitled to the entire width of the sidewalk. After receiving $2,100 from this lessee for a covenant not to sue it, the plaintiff continued her action against the owner of the property.

The trial court should have granted defendant's motion for a directed verdict. The judgment appealed from is reversed and the cause remanded with direction to the circuit court to enter judgment for the defendant.

RAND, C. J., and CAMPBELL and KELLY, JJ., concur.