Argued December 18, 1958, affirmed May 13, 1959

HAMILTON *v.* UNION OIL COMPANY ET AL

339 P. 2d 440

*A. H. Ferris,* Eugene, argued the cause for appellant. On the brief were Thompson & Sahlstrom, Eugene.

*John Jaqua* argued the cause for respondent Union Oil Company. On the brief were Thwing, Jaqua & O'Reilly, Eugene.

*Windsor Calkins* argued the cause for respondent Milo Dixon. On the brief were Calkins & Calkins, Eugene.

Before PERRY,* Chief Justice, and LUSK, WARNER and SLOAN, Justices.

---

* Chief Justice when case was argued.

LUSK, J.

Plaintiff has appealed from an adverse judgment in this action to recover damages for personal injuries based on negligence.

The action grows out of a fall sustained by the plaintiff in a gasoline service station in Lowell, Oregon, which was operated by the defendant, Milo Dixon, under a sub-lease from the defendant, Union Oil Company, a corporation, hereinafter called Union. Generally, the plaintiff charged that her fall was caused by defective premises and negligence in maintaining them. At the conclusion of the plaintiff's case, the court allowed a motion for involuntary non-suit in favor of Union. The case against the defendant Dixon was submitted to the jury, which returned a verdict for that defendant.

On this appeal, the plaintiff contends that Union's motion for an involuntary non-suit was improperly allowed, and that the court erred in its instructions. There is also a question of admissibility of evidence.

On August 24, 1954, between 1:30 and 2:00 o'clock in the afternoon, the plaintiff, a married woman 45 years of age, went to the service station for the purpose, as she testified, of paying a bill of $2.50 owed by her husband for gasoline. The service station consisted of the usual gasoline pumps and a small office, which opened at the rear on what we shall refer to as a garage, in which there was a grease rack used in the servicing of automobiles. The office had a concrete floor, which was about 3½ inches above the floor of the garage. The distance from the office entrance to the step down to the garage floor was between 3½ and 4 feet. The service station faced South.

Windows ran all the way across the south and west sides, and there were large folding doors at the west end of the garage which were open at the time of the accident, as was the door of the office.

The plaintiff testified that she was driven to the service station by a friend, who remained in the car while she went in to pay the bill. She was a friend of the defendant Dixon, and had been to the service station before but had never gone inside. She entered by the front door, took about 2½ steps before reaching the step-down, and fell to the garage floor. She thus described the occurrence:

"A Well, I came to the front of the building and I noticed this step, and I stepped up and I walked in, and I noticed there was a car in front of me, pickup or panel job, and I noticed that there was a man to my right. I didn't see him clearly, but I noticed a man standing to the right. Milo came around from behind the pickup and said, 'Hi! Jerry' or 'Hello! Jerry.' And I said, 'Hi! Milo.' I remember my foot slipping out from under me and striking the ground. It pitched me into the panel job; struck my head."

After she fell, there was grease on her sleeves, hands and forehead, and on the back of her head.

She testified that the lighting was "dim", that there were no lights inside the building, and, in answer to the question "what kind of a day it was outside" she said, "Well, it wasn't a dark, gray day, but, also, the sun wasn't shining." The floor of the service station "appeared to be gray concrete. It all appeared to be the same level." On cross-examination, the plaintiff testified that it was "dim" inside the station, but that she had no difficulty seeing.

The defendant Dixon testified that the car to which the plaintiff referred in her testimony was a panel

truck which, shortly before, had been driven in by him and parked over the rack. It was not yet raised, but was sitting on the floor. Dixon was behind the truck when he heard the plaintiff say, "Hello, Milo." He looked up. He did not see her step off the ledge, but "saw her stumbling across this space between the step-off and the panel." The width of the space was about 3 feet.

Mrs. Emily Rose McMurren, who accompanied the plaintiff to the service station and was waiting for her in the car, heard the plaintiff fall and went immediately into the garage. She was asked to describe the general condition of the floor from the doorway entrance of the service station in toward the grease rack and answered that it was all a "dark color." With reference to grease and oil on the floor, she testified in answer to a leading question that it was "greasy and oily," that there were no big puddles of thick grease, but grime and dirt that is on any kind of garage or filling station floor, "provided they are not kept clean," and that she saw grease on the upper level around the tool bench.

■ The foregoing is a statement of the facts most favorable to the plaintiff, and conflicts in the testimony have been disregarded.

The charges of negligence in the complaint are as follows:

"That at said time and place, the Defendants and each of them, were careless and negligent in the following particulars, to-wit:

"(a) In constructing, operating and maintaining the service station with a floor of different elevations immediately adjacent to the doorway entrance where the coloring or pattern of the floor gave a deceptively level appearance.

"(b) In failing to adequately light the area.

"(c) In allowing oil, grease and other slippery substances to remain on the floor so as to create a slippery condition.

"(d) In failing to construct or maintain a barrier about the recessed floor.

"(e) In failing to mark the floor so as to give adequate notice of the step and of the recessed area.

"(f) In failing to provide a safe place for customers and other persons, including the Plaintiff to walk.

"(g) In failing to warn the Plaintiff of the hazardous conditions and the dangers there existing."

In submitting the case to the jury the court withdrew specifications (a) and (d).

Plaintiff asserts liability against Union on two grounds: First, as lessor it was liable for injury to the plaintiff caused by a dangerous condition of the premises existing at the time of leasing and continuing until the time of the injury; second, the relationship between Union and Dixon was not merely that of lessor and lessee, but also principal and agent, and, therefore, that Union would be liable to the plaintiff, under the doctrine of *respondeat superior,* for the negligence of the defendant Dixon.

Plaintiff further says that the judgment in favor of Dixon should be reversed for error and a new trial awarded, in which the question of Union's liability as principal would still have to be determined.

■ Upon the first proposition, this court has announced its adherence to the rule that an owner of premises leased to another for a purpose which involves

the admission of the public, is liable for personal injury sustained by one coming on the premises at the invitation of the lessee, where such injury is caused by a nuisance or defective condition of the premises existing at the time of the letting and continuing up to the time of the injury. *Senner v. Danewolf,* 139 Or 93, 293 P 599, 6 P2d 240; *Staples v. Senders,* 164 Or 244, 263, 96 P2d 215, 101 P2d 232. In such cases, the lessor's liability extends only to those parts of the premises which are in fact thrown open to the public, and to those invitees who enter for the purpose for which the place was leased. Prosser on Torts (2d ed), p 470.

In the present case, if the plaintiff's testimony is accepted as true, her purpose in going to the service station was to pay a bill, and, therefore, she was a business invitee and within the protection of the rule, unless, as Union contends, the area to which the public was invited to transact business did not include the garage and she was, therefore, a mere licensee at the time that she was injured. In the view we take, it is unnecessary to decide this question, because there is no evidence of the existence of a defective condition of the premises at the time Union sub-let them to the defendant. Nothing out of the ordinary is shown about the construction of this service station. All that has been proven is that when the premises were inadequately lighted, the drop-off from the office floor to the garage floor might constitute a hazard to a person not aware of the conditions. The defendant Union was not responsible for the inadequate lighting. *Lewis v. Jake's Famous Crawfish,* 148 Or 340, 346, 36 P2d 352; *Whalen v. Shivek,* 326 Mass 142, 93 NE2d 393, 33 ALR2d 74; 32 Am Jur 537, Landlord and Tenant, § 669. This is not a case of an "incipient nuisance," as in *Larson v. Calder's Park Co.,* 54 Utah 325, 180 P 599,

4 ALR 731, with annotation at p 746. The governing principle is as stated by Crompton, J., in *Gandy v. Jubber,* 5 Best & S. 78, 87, quoted with approval in *Lewis v. Jake's Famous Crawfish,* supra:

"* * * But to bring liability home to the owner, the nuisance must be one which is in its very essence and nature a nuisance at the time of the letting, and not merely something which is capable of being thereafter rendered a nuisance by the tenant. * * *"

Similarly, the court said in *Whalen v. Shivek,* supra:

"If the premises can be used by the tenant in the manner intended by the landlord, either as shown by the construction of the premises or by the terms of the lease, or by other evidence, without becoming a nuisance, the landlord is not liable for the acts or neglect of the tenant which creates the nuisance. If the tenant creates the nuisance without authority of the landlord, and after he has entered into occupation as tenant, the landlord is not liable." 326 Mass at 154.

As stated in *Haddon v. Snellenburg,* 293 Pa 333, 143 A 8, quoted with approval in *Farley v. Portland Gas & Coke Co.,* 203 Or 635, 647, 280 P 2d 384:

"* * * It is not negligence per se or negligent construction in a store or other public place to have one floor at a lower level by a few inches than another. Where such difference in elevation exists, the place should be sufficiently lighted artificially to enable users to see the step, unless lit by daylight. * * *"

Reliance is placed by the plaintiff upon a passage in the Farley case, at p 655, which concludes with the statement that "a jury question may arise when the coloring or pattern of the floor covering are the same

on both floor levels, giving a 'deceptively level appearance.'" As a reading of the opinion in the Farley case will disclose, the reference here was to the case of *Simpson v. Doe,* 39 Wash2d 934, 239 P2d 1051. The "deceptively level appearance," as the court expressed it in that case, was attained not only by the coloring or pattern of the floor covering on both levels being the same or similar, but by insufficient lighting. A further circumstance was that the step was located flush with the doorway leading into a toilet room. The plaintiff, coming out of the toilet room, opened the door, failed to notice the step, and fell and was injured. A judgment for the plaintiff was affirmed. The case is not authority for sustaining liability as against the defendant Union.

Neither does *Dunn v. First National Bank of Portland,* 149 Or 97, 39 P2d 944, also relied on by the plaintiff, support her on this branch of the case. As summarized in the Farley case, 203 Or at 651, the facts showed "revolving doors with abrupt and sudden dropoff in the immediate proximity of the revolving doorway. Entrance two to three inches above sidewalk door, rapidly revolving as plaintiff stepped out." There are no such facts here.

■ We hold that no liability is shown against defendant Union as a lessor of defective premises.

We turn now to the question whether, as contended by the plaintiff, the judgment in favor of the defendant Dixon must be reversed for error committed on the trial.

The court submitted to the jury the charges that Dixon was negligent in failing to light the area adequately, in allowing oil, grease, and other slippery substances to remain on the floor, in failing to mark

the floor so as to give adequate notice of the step and of the recessed area, in failing to provide a safe place for customers and other persons including the plaintiff to walk, and in failing to warn the plaintiff of the dangerous condition.

As previously stated, the court withdrew the following two allegations of negligence in the complaint: first, maintaining a floor of different elevations near the doorway entrance where the coloring of the floor gave a deceptively level appearance, and second, failing to construct or maintain a barrier about the recessed floor. Exceptions were taken to these instructions and the rulings are assigned as error. The question as to the first of these allegations is governed by what we have said in support of our conclusion that the claim of liability against the defendant Union has not been sustained, and the allegation was therefore properly withdrawn.

■■ The allegation concerning failure to maintain a barrier might well have been submitted to the jury, for if there was a dangerous condition due to the combination of the two-level floor, the uniform coloring, the dim light and slippery substances, it would have been the duty of the defendant to give a warning to business visitors of the danger. Prosser on Torts (2d ed), p 459; Restatement of Torts, § 343. Even a licensee may be entitled to a warning under some circumstances. *Burch v. Peterson,* 207 Or 232, 236, 295 P2d 868; *McHenry v. Howells,* 201 Or 697, 703, 272 P2d 210; Restatement of Torts, § 342 and Comment f, p 936. But we are unable to see how the withdrawal of this issue could have possibly prejudiced the plaintiff. A barrier would have served the purpose of a warning, and the court did submit to the jury the

issues of failure to mark the floor and of failure to warn the plaintiff of the danger. The verdict of the jury—if it was not based on contributory negligence— clearly negatived the existence of the dangerous condition alleged and the necessity of a warning.

The defendant Dixon, in his answer, plead contributory negligence of the plaintiff in failing to look and observe where she was going. The court submitted this issue to the jury and the plaintiff excepted on the ground that there was no evidence of contributory negligence. The exception is made the basis of an assignment of error in support of which the plaintiff argues that "no one saw the plaintiff before she started to fall." It was not necessary to prove directly that plaintiff failed to keep a proper lookout; we think the fact could be inferred from the circumstances, and that the question was for the jury. We find no merit in the charge in plaintiff's brief that the court's instructions on this issue over-emphasized it. There was some unnecessary repetition, but no more so than is frequently found in instructions. The instructions take up fourteen pages of the transcript, and cover every phase of the case, and in their entirety constitute a very fair and balanced charge upon the issues and the law of the case.

Plaintiff assigns error to the giving of the following instruction:

"I instruct you that the defendant would not be held liable for injuries suffered by an invitee for a dangerous condition—that would be oil, grease or other slippery substances on the floor of the garage—of which the defendant has no knowledge unless the condition existed for such a length of time that the defendant in the exercise of ordinary care should have discovered it and could and would have remedied it before the time of the injury."

The instruction is criticized on the ground that the court should have told the jury that knowledge that oil, grease and other slippery substances were on the floor of the building was imputed to Dixon because he placed them there. No instruction to that effect was requested by the plaintiff, and it can scarcely be said that the exception taken fairly called the court's attention to the point. The only ground stated by counsel was, "That has no application to a case of this type." Putting this to one side, we think that the instruction was not erroneous. If, as it is argued, the evidence showed that the defendant Dixon placed slippery substances on the floor, then plaintiff's contention would be well founded, under such decisions as *Pond v. Jantzen Knitting Mills,* 183 Or 255, 258-259, 190 P2d 141; *Briggs v. John Yeon Co.,* 168 Or 239, 251, 122 P2d 444; *Saunders v. Williams & Co.,* 155 Or 1, 62 P2d 260; *Hesse v. Mittleman,* 145 Or 421, 423, 27 P2d 1022. The argument here is that the defendant must have tracked grease from the grease rack, where he sometimes worked, across the area where plaintiff fell. This may be a permissible inference from the evidence, but it is not a necessary one. It is not shown that Dixon or his employees (if he had any) were the only persons who had access to the garage. In fact, it is plaintiff's theory that the contrary was true— that any one having business with the defendant was invited there. Hence, cases like *Pond v. Jantzen Knitting Mills,* supra, where the plaintiff's employee was injured owing to a dangerous condition in a part of the employer's plant which was used exclusively by the employees, have no application here. Even in that case, the court said merely that it was "a reasonable deduction that the alleged condition of the passageway resulted from the act of the defendant." 183 Or at 259.

Since the evidence is not conclusive that this was true in the instant case, it was proper to give the instruction complained of. *Waller v. Northern Pacific Terminal Co.*, 178 Or 274, 302, 166 P2d 488, cert. denied 329 US 742, 91 LEd 640, 67 S Ct 45. If plaintiff desired an instruction based on the theory now advanced, she should have requested it.

■ The court gave an instruction that would have authorized the jury to find that the plaintiff was a mere licensee in the service station, and explained to the jury the nature of the rights of one having that status. Plaintiff excepted on the ground that the instruction was "an abstract and inaccurate statement of the law." Giving of the instruction is assigned as error. The instruction was not abstract because the defendant Dixon testified that neither the plaintiff nor her husband owed him any money. In view of this testimony and of the evidence that the plaintiff and Dixon were friends, it would have been competent for the jury to find that the purpose of her visit to the service station was a social rather than a business one. Indeed, the plaintiff testified that one of her purposes was to ask Dixon if he "would be going into Eugene." The jury could have found that that was her only purpose.

■ We decline to consider whether the instruction was an "inaccurate statement of the law." Such an exception raises no question for review by this court. It is no more than to say that counsel disagrees with the trial judge about the law. But it is incumbent on counsel in excepting to an instruction to inform the court *why* he thinks the instruction is wrong. In this court, counsel criticize the instruction because the court used the term "active negligence" without explaining its meaning and because an instruction based on a

distinction between passive and active negligence would only confuse the jury. These defects, if such they were, not having been called to the attention of the trial court, will not be noticed here. See *Senkirik v. Royce,* 192 Or 583, 593, 235 P2d 886; *Mercer v. Risberg,* 182 Or 526, 532, 188 P2d 632; *Kiddle v. Schnitzer,* 167 Or 316, 352, 354, 114 P2d 109, 117 P2d 983; *Cook v. Retzlaff,* 163 Or 683, 687, 99 P2d 22; *Lee v. Hoff,* 163 Or 374, 392, 97 P2d 715; *Davis v. Puckett Co.,* 144 Or 332, 334, 23 P2d 909.

■ The only other assignment of error is directed to the exclusion from the evidence of Plaintiff's Exhibit "I", being a lease between Union Oil Company and one Raish, which contained the terms of the sub-lease between Union and Dixon. The purpose of the offer of this instrument was to show that Union retained control over the premises, that Dixon was in fact Union's agent and, therefore, that the former would be liable for the latter's negligence. Inasmuch as the jury found that defendant Dixon was not liable and this court is of the opinion that the judgment in favor of Dixon should not be disturbed, it becomes unnecessary to determine whether the claimed agency existed, and the question of the admissibility of Plaintiff's Exhibit "I" is, therefore, academic.

The judgment is affirmed.