Argued March 5, affirmed April 22, 1964

# STATE OF OREGON *v.* COMMEDORE
### 391 P. 2d 605

*Millard M. Becker,* Portland, argued the cause and submitted the brief for appellant.

*Vincent G. Ierulli,* Deputy District Attorney, Portland, argued the cause for respondent. With him on the brief was George Van Hoomissen, District Attorney, Portland.

Before McAllister, Chief Justice, and Rossman, Perry, Goodwin and Lusk, Justices.

ROSSMAN, J.

This is an appeal by the defendant from a judgment of the circuit court which found him guilty of the crime of attempted burglary not in a dwelling house. The judgment of guilt, which was based upon a jury's verdict, imposed a sentence.

The defendant-appellant presents these two assignments of error:

(1) "The Court erred in failing to direct a verdict of acquittal at the close of the State's case in chief. * * *."

(2) "The Court erred in giving the jury the following instruction: * * * voluntary intoxication, to be available as a defense, must result in a diseased condition of the mind, delirium tremens, or some other form of insanity. * * *"

A restaurant known as Tad's Chicken & Dumplings occupies a two-story structure near Troutdale in east Multnomah County. The state claims that on February 23, 1963, the defendant and two companions attempted to burglarize the establishment. The upper floor of the restaurant structure faces upon the thoroughfare. The opposite side faces upon Sandy River.

The upper floor houses the restaurant. The ground occupied by the structure slopes sharply from the highway down to the river level. Some living quarters were built into the lower part of the building, but they remained unoccupied. Apart from the living quarters, the first or basement part of the building remained unfinished. Its posts, beams and the sloping ground were open to view by those who descended to the river level.

A short distance from Tad's Chicken & Dumplings another restaurant offered itself for patronage. Those were the only business enterprises in the immediate area. Tad's Chicken & Dumplings opens for business in mid-afternoon and closes about 2:30 a.m.

The state claims that the defendant and two of his companions, Thomas Calhoun and Joseph Washington, planned to burglarize Tad's place February 23, at about 3 a.m. and that they planned to enter it by forcing open a door or window in the basement part of the structure.

The defendant lived on lower Multnomah Street in Portland. In the evening of February 23 a police car containing several officers was parked near the defendant's living quarters and, according to one of the officers, the latter saw a car stop near the defendant's home at 11:45 p.m. whereupon the defendant entered the car. When the car proceeded on its way, the police car followed it until it finally came to Tad's Chicken & Dumplings where it stopped. The police car went about a quarter of a mile further. Shortly one of the officers drove in a private car near the car in which the defendant had been a passenger and which was parked at Tad's Chicken & Dumplings; he observed, so he swore, that it was then unoccupied.

One of the officers presently approached on foot Tad's place. He was on the opposite side of the stream less than 50 feet from the basement part of Tad's. As a witness that officer swore that he could plainly hear voices coming from the basement area of Tad's. He also swore that he heard noises that sounded like efforts to pry something loose and other sounds that seemed to be made by tools that were tapping or hammering. Then a car with bright headlights drove upon the restaurant grounds and stopped there. At that juncture the sounds ended. Before long Calhoun and Washington came to their car. The defendant was already seated in it. At that time the police placed all three under arrest. When the police looked into the car that the three men occupied, they noticed in it tools that could be used to force open windows and doors. They also found in the car a gun and a pair of gloves. When the officers went under the restaurant into the basement area they found several burglar tools such as a crowbar and screwdrivers.

Upon inspecting the basement area, the police found upon a door and a window frame fresh marks which one of them described in this way: "what we call a jimmy mark or a crowbar mark." One of the officers testified that one of the tools found in the car occupied by the three men corresponded precisely in width with a mark that had been made upon the door. The following are his words:

"A Well, on the edge of the jamb were marks that this particular bar exactly fit into. The marks were fresh. There were loose splinters where they had been broke loose and were still hanging, and in the door itself, on the door was the impression, a deep impression on the door which the back side of the crowbar fit into.

"Q  I see.

"A  And when the door was closed with the initial—to the point in the jamb on the casing at the point and held there, the door closed and then pushed back as if there was pressure on it—it exactly fit in.  *  *  *

*          *          *

"A  Other than the fact that it, as close as a person can see, exactly fit. We measured the back part of the bar. I did, myself, at the time measure the back part of the bar, and measured the impressions, and they all coincided, and the bend in the bar when the door—it fit in with the impressions in the door, the amount of the bend, when it was placed there.

"Q  Isn't it a fair statement to say that all you noticed is that that instrument, Exhibit No. 2, is of the size and dimension that could have made the marks?

"A  Yes, that's right.

"Q  You have no way of saying that that —

"A  No.

"Q  — instrument did make the marks?

"A  No; physically and dimension-wise, and in its contour fit."

Mrs. Olga Cummins, owner of the restaurant, gave testimony about the marks on the door and windows that was similar to that of the police officers.

One of the officers noticed in the defendant's hair "a fairly large accumulation of cobwebs." He also noticed mud upon the defendant's shoes. The officer took the cobwebs into his possession, placed them in

an envelope and they are now before us as an exhibit. As a witness the defendant testified:

"Q How did you get the cobwebs in your hair, Mr. Commedore?

"A I don't know."

Shortly after the arrests had been made, the defendant spoke to the police officers and acknowledged his criminal activity. One of the officers transcribed on a typewriter the defendant's statements and then read them to him. The defendant admitted the accuracy of the statements, but declared that he preferred not to sign them. The trial judge, after conducting an inquiry into the voluntary character of the purported confession, ruled in favor of its admissibility. In our belief the ruling was correct.

■ ORS 136.540 (1) states:

"Nor is a confession only sufficient to warrant his conviction without some other proof that the crime has been committed."

We believe that the record contains adequate substantial evidence apart from the confession showing the commission of the crime by the defendant. The first assignment of error lacks merit.

ORS 136.400 declares:

"No act committed by a person while in a state of voluntary intoxication shall be deemed less criminal by reason of his having been in such condition; but whenever the actual existence of any particular motive, purpose or intent is a necessary element to constitute any particular species or degree of crime, the jury may take into consideration the fact that the defendant was intoxicated at the time, in determining the purpose, motive, or intent with which he committed the act."

ORS 164.240 renders intent an element of the crime that is charged by the indictment against the defendant.

There is no evidence in this case that the defendant was intoxicated. The record indicates that he had purchased a bottle of wine and that he drank some of it; but the words "intoxicated," "inebriated," "tipsy," "befuddled" and their synonyms were not used at any time during the trial. The defendant requested no instruction on the effect of intoxication. The defendant's only exception to the instruction of which we have just taken notice was, "Defendant excepts to the instruction on intoxication." That exception was too general to acquaint the court with why counsel thought the instruction was wrong and therefore it was insufficient. *Miller v. Lillard,* 228 Or 202, 364 P2d 766; *Galer v. Weyerhaeuser Timber Co.,* 218 Or 152, 344 P2d 544; *Wilson v. State Industrial Accident Commission,* 189 Or 114, 219 P2d 138; *Hamilton v. Union Oil Co.,* 216 Or 354, 339 P2d 440. We would be justified in ignoring this contention of the defendant; but there is still another ground for holding that this contention reveals no merit. By reverting to ORS 136.400 it will be observed that it says "whenever the actual existence of any particular motive, purpose or intent is a necessary element * * * the jury may take into consideration the fact that the defendant was intoxicated." Plainly, before the instructions speak of intoxication, the record should indicate that the defendant was intoxicated. How large a bottle of wine the defendant purchased, or the price that he paid for it was not revealed. Nor did the defendant disclose how many drinks he took from the bottle nor how many his companions may have taken. As we have said, the

record contains no evidence whatever warranting a belief that the defendant was intoxicated or was feeling, even to a slight degree, the effect of the wine.

The challenged instruction, in our opinion, was surplusage and nonprejudicial to any issue in the case. The second assignment of error lacks merit.

The judgment of the circuit court is affirmed.