Argued September 14, reversed December 14, 1966

# BERGMAN *v.* COOK ET UX

421 P. 2d 382

*James H. Clarke,* Portland, argued the cause for appellants. With him on the brief were McColloch, Dezendorf & Spears, and Nelson and Zikes, Portland.

*J. W. Darr,* Beaverton, argued the cause for respondent. With him on the brief were Thompson & Adams, Beaverton.

Before McALLISTER, Chief Justice, and SLOAN, GOODWIN, HOLMAN and LUSK, Justices.

LUSK, J.

The defendants appeal from a judgment for the plaintiff in an action to recover damages for personal injuries. Plaintiff sustained her injuries as the result of a fall at a time when she was a guest of the defendants in their home.

The second amended complaint, on which the case was tried, alleges:

"* * * that said dwelling house was constructed in such a manner so that there was a step down of approximately eight inches from the entrance hallway to the living room; that the floors in said entrance hallway and living room were constructed with hardwood boards running in the same direction on both levels, and that said floors were highly polished, and that because of these characteristics of the boards running in the same direction and being highly polished, the two levels appeared to blend into one another, making a step down extremely difficult to see by one using ordinary care and skill who was unaware of its existence.

"II

"That on or about July 8, 1963, at approximately 6:00 o'clock P.M., plaintiff entered the above mentioned dwelling house for the first time as a social guest of the defendants, and being unaware of the step between the entrance hallway and the living

room of said house, failed to see said step and did fall down said step into the living room as she entered the house, thereby sustaining serious, painful and permanent injuries, more hereinafter particularly described."

It is alleged that defendants were negligent:

"1. By failing to take reasonable precautions to protect the plaintiff from the peril of the step down from the entrance hallway to the living room by making said step down more easily ascertainable by one who was unaware of its existence.

"2. By failing to provide adequate lighting in and around the entrance hallway and the area around the step leading from the entrance hallway to the living room of defendants' home."

Defendants assign as error the court's denial of their motions for judgment of involuntary nonsuit and directed verdict.

The following, taken from the defendants' opening brief, is an accurate description of the premises, as disclosed by the evidence:

"The entrance hall where the accident occurred is about 8′ by 10′. The front door of the house is on its west side near the southwest corner of the entrance hall. It opens to the left away from the living room as one enters the house. There was an oval fringed rug on the floor of the entrance hall. Opposite the front door is a carpeted stairway leading to the second floor. To the left is a hall door, which leads to the kitchen, and an open archway leading to the dining room. To the right of the front door and at a right angle to it is a 2′ or 3′ wall, beyond which is a 5′ long open archway running east and west and extending to the ceiling, which connects the entrance hall and the living room. Since the living room is below the level of the entrance hall, the two levels form a single 6½″

step under the archway. The archway and the step were entirely open to view; they were not hidden or obstructed in any way.

"There are large windows on the west side of the house in the dining room and the living room. There were no curtains on the windows of either room at the time of the accident. * * *"

Plaintiff is the aunt of the defendant, Gilbert E. Cook. On the day of the accident, July 8, 1963, she was enroute by motor from Bellevue, Washington, to her home in Phoenix, Arizona, with her brother, Gilbert R. Cook, and his daughter Jan. Gilbert R. Cook is the father of the defendant Gilbert E. Cook. They stopped in Portland to see the defendants. They had never before been in the defendants' house. They arrived at the house about 7 p.m. Pacific Daylight Time, and were greeted at the door by the defendant Mrs. Cook. Her husband was out of town.

The plaintiff was the last one to enter the house. As she entered her attention was attracted to what she described as the beautiful carpeted, curving stairway, and to a very bright light that seemed to be coming from a breakfast nook and some "very beautiful wooden cabinets" beyond the dining room. She did not notice the living room because it was at her back. She testified: "I had no reason to look to my right, I guess, because I was looking at the stairway and then glanced, I was in the direction of the kitchen." All the evidence shows that she was not aware of the living room or of the entranceway to it, until after she fell. As the three visitors and their hostess stood in the hallway conversing—plaintiff's brother on her left and Mrs. Cook on her right—two little girls, one of them the daughter of the defendants, came to greet them. It was then— less than two minutes after they entered the house—

that the accident occurred. We quote from the plaintiff's testimony:

"Well, we entered the home and we had just barely entered when the two little girls came across the driveway, across the foyer to greet us. The one little girl was the granddaughter [of plaintiff's brother], and she went up to her grandfather and embraced him and then came to me and put her arms around my neck and I stooped over and kissed her, and as I raised up I put my foot back, my right foot back of me and found there was nothing to support it and I went over onto my side."

Plaintiff then looked at the step and saw "it was exactly like the other, highly polished and hardwood and the board running the same direction as the floor I had fallen on." She further testified:

"I went back to the step afterwards and looked at it across from the foyer and discovered that it was so much the same as the flooring in the living room that it wasn't distinguishable with the light coming from the kitchen, which was the only light that there was."

Plaintiff's brother testified that he did not see the step down into the living room as he entered the house because "it looked like it was the whole floor was level, to me, and I never had any reason to doubt whether it was level or not * * * it was an oak floor and all looked the same to me and the grain, the oak was running in the same direction both levels, after I noticed it later." On cross-examination he testified that when he entered the house he did not notice the living room or the entranceway into it and that he first noticed the foyer and the circular staircase and the kitchen, "that is all," and that he saw the step after his sister fell.

Respecting visibility, the evidence shows that it is

daylight at 7 p.m. Pacific Daylight Time on July eighth, but that the weather was overcast and it is darker where there is overcast. The plaintiff testified that if she had looked down before walking into the living room and while facing it, she no doubt would have seen the step. Her niece testified: "I got directly in front of the step, and I couldn't miss it, because I was directly facing, looking right into the living room at that time; * * *." As previously noted, the plaintiff had no difficulty in seeing the carpeted, curving staircase, or the woodwork of the cabinets as she looked toward the kitchen, or, after she fell, the direction of the grain of the boards on the two levels. She further testified that at that time she observed that there was a large oval carpet in the hallway that was fringed and appeared to have been the same texture as the carpet going up the stairway. She was asked if she could see some of the things in the entrance hall "very minutely" and answered in the affirmative.

There was evidence of what are claimed to be admissions made by Mrs. Cook after the accident. According to this evidence she said to the plaintiff: "I should have warned you of the stepdown living room." And "they didn't know exactly what to do about it," that is, "about the hazard." Mrs. Cook testified: "I probably said that some people don't notice it right off, that perhaps we should put something there so that they did"; and that one or two people have "caught themselves," but "nobody has fallen." ·

■■ Plaintiff was a social guest in the home of defendants. Her legal status was that of a licensee, not an invitee, and so far as the issues and evidence in this case are concerned, the only duty of the defendants towards her was to warn her of a concealed danger— sometimes called a trap—of which the defendants had

knowledge: *Fleck v. Nickerson,* 239 Or 641, 643-644, 399 P2d 353; *Baer v. Van Huffell et ux,* 225 Or 30, 33, 356 P2d 1069; *McHenry v. Howells et ux,* 201 Or 697, 272 P2d 210. See, also, *Hamilton v. Union Oil Company et al,* 216 Or 354, 364-365, 339 P2d 440. A concealed danger is one which a person who does not know the premises could not avoid by the exercise of reasonable care: *McHenry v. Howells et ux,* supra, 201 Or at 703.

■ Floors at different levels in a house, separated by one or more steps, are not uncommon and cannot reasonably be considered a danger or a "structural defect," as the plaintiff's brief suggests: *Baer v. Van Huffell et ux,* supra, 225 Or at 34; *Hoag v. Moeller* (Fla) 82 S2d 138, 139; *Bowles v. Elkes Pontiac Co.* (Fla) 63 S2d 769, 772; *Magoni v. Wells* (La App) 154 S2d 524, 526, writ refused 245 La 58, 156 S2d 602.

It will have been noticed that the complaint alleges that, because of the highly polished hardwood boards running in the same direction on both levels, "the two levels appeared to blend into one another, making a step down extremely difficult to see." But it is nowhere alleged that plaintiff was misled by this appearance. She alleged that "being unaware of the step between the entrance hallway and the living room of said house, [she] failed to see said step * * *." Obviously, she could not have truthfully alleged, and she did not testify, that she failed to see the step because of the blending of the two floor levels. She failed to see the step because she was looking the other way. She fell, because, while looking the other way, she took a step backwards. For all that appears, if she had been looking in the direction of the living room she would have seen the step, as her niece did, and would have needed no warning from her hostess to avoid injury.

■ There was no concealed danger as to the plaintiff, who never consciously undertook to enter the living room. In other words, the deceptive appearance of the floor testified to by witnesses for the plaintiff, was an irrelevant circumstance. The court erred in denying the motion for a directed verdict.

The judgment is reversed.